James Clarence ROSCOE, Individually and on behalf of all others similarly situated,

v.

J. Jerome BUTLER, Chief Constable, L. Zimmerman, Deputy Constable, District Court of Maryland, Individually and on behalf of all others similarly situated.

Julene WRIGHT, Individually and on behalf of all others similarly situated,

v.

J. Jerome BUTLER, Chief Constable, District Court of Maryland, Individually and on behalf of all others similarly situated.

Civ A. Nos. 72–791–N and 72–1268–N.

United States District Court,
D. Maryland.

Dec. 3, 1973.

Marilyn Fisher and Alan S. Davis, Law Reform Unit, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., of Maryland and Thomas G. Young, Asst. Atty. Gen., of Maryland, Baltimore, Md., for defendants.

Before WINTER, Circuit Judge, NORTHROP, Chief District Judge, and MURRAY, District Judge.

NORTHROP, Chief District Judge.

The plaintiffs instituted these suits as class actions, each challenging the constitutionality of attachment upon original process after two summonses have been returned *non est*, as authorized by the Annotated Code of Maryland, Article 9, Section 1(b) (Cum.Supp.1972) and Maryland District Court Rules G40 et seq., on the grounds that this procedure violates the due process clause of the fourteenth amendment. The plaintiffs request this Court to enter declaratory judgments and to permanently enjoin the defendants from executing any writs of attachment issued pursuant to the statute and rules in question.[1]

Since relief is sought pursuant to 42 U.S.C. § 1983 (1970), the jurisdiction of this Court is invoked under 28 U.S.C. § 1343(3) (1970). A three-judge court was designated and convened pursuant to 28 U.S.C. §§ 2281 and 2284 (1970).[2]

Initially, we find that this Court has jurisdiction under 28 U.S.C. § 2281 to review the constitutionality of the Maryland District Rules. Section 2281 provides in relevant part:

> An interlocutory or permanent injunction restraining the enforcement . . . of any State statute by restraining the action of any officer of such State in the enforcement . . . of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court . . . upon the ground of unconstitutionality . . . unless the application . . . is . . . determined by a district court of three judges . . . . .

The Supreme Court has construed the term "State statute" to mean a statute or regulation, created or authorized by a state legislature that has statewide application or effectuates a statewide policy. Board of Regents v. New Left Education Project, 404 U.S. 541, 542, 92 S. Ct. 652, 30 L.Ed.2d 697 (1972). Furthermore, a "statute" does not encompass local ordinances or regulations, Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), or a state statute having only local impact, Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 83 L.Ed. 1242 (1939).

In the instant case, the Court of Appeals of Maryland is authorized by Md.Ann.Code Art. 26 § 25 (1973) "to prescribe by general rules, the practice and procedure in all civil actions both at law and in equity in all courts of record

---

1. In addition, the plaintiffs claim that the equal protection clause of the fourteenth amendment has been violated by Md.Ann. Code Art. 9 § 1(b) (Cum.Supp.1972), Md. Dist.Ct.R. G40 et seq., and Md.Dist.Ct.R. G57, the last of which authorizes the release of an attachment upon the posting of a bond. In view of our holding herein, we do not find it necessary to pass on these contentions.

2. These two cases have been consolidated for all purposes, pending further order of the Court, in accordance with Order of Consolidation filed on August 20, 1973.

throughout the State." The rules thus prescribed have the force of law within the state. Md.Const. art. IV, § 18A; Hill v. State, 218 Md. 120, 127, 145 A.2d 445, 449 (1958). The Maryland District Court has been designated a court of record by Art. IV § 1 of the Maryland Constitution and has been invested with uniform jurisdiction throughout the state by § 41A. Therefore, since the Court of Appeals promulgated the Maryland District Rules in 1971 "for the governance of the District Court of Maryland . . . in all actions and proceedings therein," Md.Dist.Ct.R. G40 et seq. constitute "state statutes" within the meaning of 28 U.S.C. § 2281.[3]

## I.

This action is a consolidation of two cases. The factual setting of each is set forth below.

(a) Roscoe v. Butler—Prior to the middle of October 1971, plaintiff, James C. Roscoe, became indebted to the Korvettes Division of Arlen Realty and Development Corporation in the amount of $1,268.43. On October 27, 1971, Korvettes filed suit in the District Court of Maryland against plaintiff and summoned him to appear for trial on December 9, 1971. On November 19, 1971, however, Deputy Constable O'Rourke made a return of *non est* as to the plaintiff, stating that he had moved. A second summons was sent by certified mail to Mr. Roscoe, but was returned on January 3, 1972, with the post office notation that there had been no answer at the address.

Consequently, on or about June 6, 1972, Arlen Realty, through its agent, Central Credit Control, Inc., filed a petition for a writ of attachment after two *non ests* against Mr. Roscoe's property pursuant to Md.Ann. Code Art. 9 § 1(b)

(Cum.Supp.1972) and Md.Dist.Ct.R. G40 et seq. In addition, Arlen Realty and Central Credit filed District Court Form 170 requesting attachment of Mr. Roscoe's 1967 automobile. On July 3, 1972, a writ of attachment was issued, and Deputy Constable L. Zimmerman, under the supervision of defendant, J. Jerome Butler, went to plaintiff's home, seized the automobile, and delivered it to a garage for storage. This attachment was made without prior notice, opportunity to be heard, or judgment being entered in favor of Arlen Realty or Central Credit against plaintiff, James C. Roscoe.[4]

(b) Wright v. Butler—On March 17, 1972, Oakley Sales, through its agent, Capitol Credit Agency, Inc., filed suit in the District Court of Maryland against the plaintiff, Julene Wright, alleging that Mrs. Wright was indebted to Oakley Sales in the sum of $429.03. A summons issued to Mrs. Wright was returned *non est* on June 22, 1972 and November 9, 1972. On November 14, 1972, Capitol Credit filed a petition for a writ of attachment after two *non ests* pursuant to Md.Ann.Code Art. 9 § 1(b) (Cum.Supp.1972) and Md.Dist.Ct.R. G40 et seq. against the property of Mrs. Wright. In addition, Capitol Credit filed District Court Form 170 requesting seizure of all of Mrs. Wright's household goods and possessions. A writ of attachment was issued on November 29, 1972, and five days later two constables, under the supervision of defendant, J. Jerome Butler, went to the home of Mrs. Wright where she turned over to the constables a passbook to a savings account and signed an authorization for the withdrawal of money from the account. The next day the constables withdrew from the account $461.03, which represented the amount

---

3. Even if we assume that the defendants are local officers, they can still be enjoined by a three-judge court because they are functioning pursuant to a statewide policy and perform a state function. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).

4. On August 3, 1973, plaintiff, James Clarence Roscoe, through his counsel, filed a notice of voluntary dismissal as to two of the original named defendants, Arlen Realty and Development Corporation and Central Credit Control, Inc., in Civil Action No. 72–791–N.

claimed plus charges and costs. This attachment was made without prior notice, opportunity to be heard, or judgment being entered in favor of Capitol Credit or Oakley Sales against Mrs. Wright.[5]

## II.

Judicial proceedings by way of attachment is an area of the law whose roots have been traced as far back in time as the year 1483 in London where the "custom of foreign attachment" was regularly practiced. W. Hodge & R. McLane, The Law of Attachment in Maryland, § 1 (1895). The concept of attachment was incorporated into the laws of Maryland by the Act of 1715, Chap. 4, apparently for the purpose of compelling the appearance of a non-resident defendant or absconding debtor.[6] The Act facilitated this function by introducing the concept of a return of summons twice *non est*. When such a return was made, the statute treated the defendant, for all practical purposes, as an absconding debtor. The case law in Maryland has uniformly supported this view. Randle v. Mellen, 67 Md. 181, 189, 8 A. 573 (1887); Dirickson v. Showell, 79 Md. 49, 51–52, 28 A. 896 (1894).

The present Maryland Law authorizing attachments on original process is Article 9, Section 1 of the Maryland Annotated Code:

A court, including the District Court within the limits of its jurisdiction, may issue an attachment on original process against any property or credits, whether matured or unmatured, belonging to the debtor upon the application of any person that has the right to become a plaintiff in an action in this State in any of the following instances:

.    .    .    .    .    .

(b) Where a resident defendant after two summonses has been returned non est to two separate return days. [Md.Ann.Code Art. 9 § 1 (Cum.Supp. 1972)].

The plaintiff challenges only the constitutionality of this subsection and the implementing Rules of the Maryland District Court, G40 et seq.[7] These rules provide that an attachment under subsection (b) can issue only upon an action *ex contractu* for liquidated damages. Md.Dist.Ct.R. G41 b. Furthermore, in order to commence an attachment after two *non ests*, the plaintiff-creditor must file with the Clerk: (1) a statement of his claim; (2) his own affidavit or an affidavit on his behalf setting forth that he knows, or he is credibly informed and verily believes that he is entitled to the issuance of attachment based upon the return of two *non ests*; (3) either the original, or sworn, certified or photostatic copies of all material papers or parts thereof which constitute the basis of the claim, unless the absence thereof is explained in the affidavit, and (4) instructions to the Sheriff as to the description and location of the property of the defendant to be attached. Md.Dist.Ct.R. G42. When the plaintiff has taken these steps, the Clerk must issue the writ of attachment against the property of the defendant

---

5. On August 3, 1973, plaintiff, Julene Wright, through her counsel, filed a notice of voluntary dismissal as to Capitol Credit Agency, Inc., originally named as defendant in Civil Action No. 72–1268–N.

6. The law of attachments, however, grew in importance when creditors realized that attachment not only served to compel a defendant's appearance, but also served as a means of securing a fund out of which a judgment in favor of the plaintiff could be satisfied. *See* W. Hodge & R. McLane, The Law of Attachment in Maryland, *supra* § 3, at 3.

7. Effective July 1, 1972, Art. 9 § 1 was amended by the addition of the phrase "A court, including the District Court within the limits of its jurisdiction, may issue" and the deletion of the words "An attachment on original process may issue". Ch. 181, § 9 (1972) Laws of Maryland 555. The Rules promulgated under Art. 9 § 1, however, still permit the automatic issuance of a writ of attachment by the Clerk of the Court upon the filing of the proper documents and do not require the creditor to present his claim to the State circuit or district judge. *See* p. pp. 577–578 *infra*.

and assign the case for trial. Md.Dist. Ct.R. G44. The plaintiff-creditor, however, need not post a bond in the sum alleged to be due from the defendant unless the attachment is grounded, *inter alia,* on Article 9 § 1(c) in an action *ex delicto.*

The attachment is not automatically dissolved by the appearance of the defendant. Rather, the defendant-debtor may dissolve the attachment by posting bond in an amount equal to the value of the property as determined by the Court, or double the amount of the plaintiff-creditor's claim, whichever is less. Md.Dist.Ct.R. G57.

A defendant may also seek to have the writ of attachment quashed on the grounds that there are substantial procedural irregularities or jurisdictional defects. *See* Cole v. Randall Park Holding Co., 201 Md. 616; 95 A.2d 273 (1953); Morgan v. Toot, 182 Md. 601, 35 A.2d 641 (1944). If the motion to quash is granted, however, and the plaintiff appeals, the writ of attachment remains in force pending decision on appeal, provided that within ten days after the decision of the trial court, the plaintiff files a bond. Md.Dist.Ct.R. G51 d.

There is no provision for notice or opportunity to be heard prior to attachment of the debtor's property.

### III.

In Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Supreme Court held unconstitutional Wisconsin's garnishment law on the grounds that its failure to provide a debtor with notice and opportunity to be heard before his wages were summarily garnished violates the due process clause of the fourteenth amendment.

In *Sniadach* the Court found the nature of the property taken to be of critical importance, because the deprivation of wages without notice or opportunity to be heard inflicted a tremendous hardship on the wage earner and accorded an unconscionable advantage to the creditor

in the collection process. 395 U.S. at 340–342, 89 S.Ct. 1820. The Court's emphasis on the type of property involved, however, spawned considerable confusion in the lower courts concerning the scope of *Sniadach. See* Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970) (Three-Judge Court); Brunswick Corp. v. J. & P., Inc., 424 F.2d 100 (10th Cir. 1970). This uncertainty was resolved by the Court in the 1972 case of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972). In *Fuentes,* the Court declared that a State's authorization of a prejudgment seizure of a debtor's property via a writ of replevin upon an *ex parte* application to a court clerk and posting of a bond violates due process, because the debtor is not given prior notice and an opportunity to be heard. The Court reasoned that since the purpose of notice and an opportunity to be heard in due process is to prevent arbitrary or mistaken deprivation of property, the only manner in which that function could be fully effectuated is to require the hearing prior to any taking; 407 U.S. at 80–82, 92 S.Ct. 1983; the bond requirement of the state statutes can be no substitute for "an informed evaluation by a neutral official." 407 U.S. at 83, 92 S.Ct. at 1996. Moreover, the Court found that the concept of "property" can not be confined to "necessaries" of life and that a "deprivation" includes even a temporary taking. Therefore, as a result of *Fuentes,* the summary deprivation of any property interest under the authority of the State is constitutionally suspect.

*Sniadach* and *Fuentes,* however, did recognize the existence of certain "extraordinary" situations that would justify the seizure of property of a defendant without according him notice and an opportunity to be heard. In *Sniadach,* the Court stated:

Such summary procedure may well meet the requirements of due process in extraordinary situations. [citations omitted]. But in the present case no situation requiring special pro-

tection to a state or creditor interest is presented by the facts; nor is the Wisconsin statute narrowly drawn to meet any such unusual condition. Petitioner was a resident of this Wisconsin community and *in personam* jurisdiction was readily obtainable. 395 U.S. at 339, 89 S.Ct. at 1821.

In *Fuentes*, the Supreme Court elaborated further on these "unusual" situations by setting forth a tripartite test to determine whether such extraordinary situation exists and whether the statute is narrowly drawn to meet only those situations. The specific language of the Court is as follows:

> There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. [citation omitted]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. [footnotes omitted]. 407 U. S. at 90–91, 92 S.Ct. at 1999.

Therefore, the issue confronting lower courts in assessing the constitutionality of a statute that permits seizure of property without notice or opportunity to be heard is whether the state procedure satisfies each of the three parts of the *Fuentes* test. *See, e. g.*, United States Industries, Inc. v. Gregg, 348 F.Supp. 1004, 1020–1023 (D. Del.1972); Geisinger v. Voss, 352 F. Supp. 104, 109–111 (E.D.Wis.1972). Upon a complete consideration of the briefs and argument of counsel in this case, we conclude that the Maryland Statute, Art. 9 § 1(b), and Maryland District Court Rules, G40 et seq., are unconstitutional insofar as they fail to satisfy the third part of the *Fuentes* test.

A. *Existence of an Important Governmental or General Public Interest*

In Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), quasi in rem jurisdiction was exercised by a Delaware court when a non-resident plaintiff attached the shares of stock of a Delaware corporation belonging to a non-resident defendant. Although the consistency of this summary attachment with due process was not addressed by the Supreme Court, the present Court in *Fuentes* approved of the use of quasi in rem jurisdiction in *Ownbey* because it involved "attachment necessary to secure jurisdiction in state court—clearly a most basic and important public interest." 407 U.S. at 91 n. 23, 92 S.Ct. at 1999. The Court, however, failed to define with sufficient specificity how "necessary" the attachment had to be in securing jurisdiction. This omission has prompted considerable controversy among courts and commentators. On one hand, the majority of courts considering the issue have implicitly found "necessity" merely from the fact that the defendant was a non-resident and presumably not amenable to personal service. *See, e. g.*, United States Industries, Inc. v. Gregg, *supra*, 348 F.Supp. at 1021; Schneider v. Margossian, 349 F.Supp. 741, 744 (D.Mass.1972). On the other hand, commentators have argued that "necessary" means the *only* way in which the State could have obtained jurisdiction in the case. Thus if an alternative procedure, such as a Long Arm Statute, would provide *in personam* jurisdiction, summary attachment via quasi in rem action would not satisfy the due process clause. Note, Quasi in Rem Jurisdiction and Due Process Requirements, 82 Yale L.J. 1023, 1029–34 (1973); *accord* Tucker v. Burton, 319 F.Supp. 567, 577–578 (D.D. C.1970) (Wright, J., dissenting).

Although the statute and rules in the instant case apply only to resident debtors, the rationale of *Ownbey,* as expressed in *Fuentes,* controls. The return of summonses twice *non est* is ample evidence that *in personam* jurisdiction is *not* available, and consequently, the only way in which a State can assert its jurisdiction over the defendant is by use of a quasi in rem action. In other words, since the resident debtor's appearance cannot be obtained through the usual service of process procedures, he is in the same position vis-a-vis state jurisdictional authority as a non-resident.

The plaintiffs assert that even if the resident debtor is not located by two routine service of process attempts, that fact does not in itself justify summary attachment, because the creditor has failed to exhaust every available means of securing *in personam* jurisdiction. Specifically, the plaintiffs claim that the creditor should be required to have a special process server appointed by the court (Md.Dist.Ct.R. 116) or employ the Maryland rule whereby the court authorizes personal service by delivery of a copy of the complaint and summons to the defendant's last known address and to a person of suitable age and discretion at the defendant's place of business or usual abode. (Md.Dist.Ct.R. 104 h).

If the only public interest to be served by the summary seizure after two *non ests* is the securing of State jurisdiction, the position of the plaintiffs may have some merit. But the plaintiffs' contention does not take into account the dual role played by the return twice *non est.* Not only does the return twice *non est* evidence a lack of personal jurisdiction, but ever since its enactment by the Act of 1715, it has been the basis of the presumption that the defendant is an absconding debtor. *See* Randle v. Mellen, *supra*; Dirickson v. Showell, *supra.* Courts and commentators agree that there is a legitimate public interest in preventing debtors from evading service or absconding. *See* Fuentes v. Shevin, *supra,* 407 U.S. at 93, 92 S.Ct. 1983; Note, 82 Yale L.J., *supra,* at 1027–28

(1973); *cf.* Cedar Rapids Eng. Co. v. Haenelt, 68 Misc.2d 206, 326 N.Y.S.2d 653 (Sup.Ct. Sullivan Cty. 1971), aff'd, 333 N.Y.S.2d 953 (1972); Kosches v. Nichols, 68 Misc.2d 795, 327 N.Y.S.2d 968 (Civ.Ct. City of N.Y. 1971). Requiring the creditor to exhaust all other available procedures for *in personam* jurisdiction would severely jeopardize his ability to collect upon a future judgment since the debtor would be accorded that much more time to dispose or conceal the property. Therefore, inasmuch as the attachment on two *non ests* serves to both secure state jurisdiction and prevent the debtor from absconding, the creditor should only be required to obtain the two *non ests,* not to exhaust all state procedures for securing *in personam* jurisdiction. *See* Lebowitz v. Forbes Leasing & Finance Corp., 456 F.2d 979, 982 (3d Cir.), cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972) (use of long-arm statute to secure jurisdiction over non-resident debtor not viable alternative to summary attachment because the former could result in extended litigation on whether sufficient minimum contacts existed to justify use of long-arm statute). We conclude that Md.Ann.Code Art. 9 § 1(b) (Cum.Supp. 1972) and Md.Dist.Ct.R. G40 et seq. serve a valid public interest within the meaning of *Fuentes.*

### B. *Need for Prompt Action*

The Supreme Court in *Fuentes* stated that "[t]here may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods." 407 U.S. at 93, 92 S.Ct. at 2000. As was mentioned above, the return twice *non est* gives rise to a presumption that the debtor is absconding. The plaintiffs in the instant cases seek to cast doubt on the validity of this presumption by stating that since a creditor employs several types of collection devices prior to instituting suit, the debtor has plenty of time to abscond with the property. Blair v. Pitchess, 5 Cal.3d 258, 96 Cal. Rptr. 42, 486 P.2d 1242 (1971). The

plaintiffs' position, however, is not in accordance with the practical reality of a defaulting debtor situation. The decision to abscond can occur at any time during the collection procedure or at the initiation of judicial proceedings. The debtor conceivably could be expecting to obtain a raise in salary, to find a new job, or to strike it rich at a numbers game. Then when suit is finally initiated and the debtor's hopes are not realized, the possibility of absconding may emerge. Thus, to say that all debtors will decide whether or not to flee upon the receipt of the first collection notice is not justifiable.

It is impossible for a creditor to know when the decision to abscond is made by the debtor. The creditor has no ability to read the debtor's mind; he must rely on external objective manifestations of internal intent. The return twice *non est* is a reasonable indicia of an intention to abscond and when sufficiently supported by other evidence can give rise to the need for prompt action.

### C. State's Maintenance of Strict Control Over Its Monopoly of Legitimate Force

The third part of the *Fuentes* test requires that the person initiating the seizure be a government official responsible for determining whether the seizure was necessary and justified in the particular instance. Since in *Fuentes* the creditor could obtain a writ of replevin upon a bare assertion that he is entitled to the debtor's property, the Supreme Court found that the State had abdicated its control over state power.

No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official

evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark. [footnote omitted]. 407 U.S. at 93, 92 S.Ct. at 2001.

In the instant case, the Maryland two *non est* procedure provides the court with a significantly greater amount of information on the creditor's claim than was required by the statutes in *Fuentes;* here a statement of an *ex contractu* claim for liquidated damages supported by documentary evidence and two *non est* must be filed before the writ can be issued. Because of this difference, the State argues that the Maryland statute and rules satisfy the third part of the *Fuentes* test.[8] We find the State's position untenable.

The thrust of the third part of the *Fuentes* test is that the state official responsible for issuing the writ of attachment must be invested with sufficient authority to review the claim and determine if summary seizure is appropriate in a particular factual setting. We are convinced that Maryland does not provide the clerk with any such authority. *See* C. Tatelbaum, New Balance in the Rights of Creditors and Debtors; The Effect on Maryland Law, 2 U.Balt.L. Rev. 236, 249–50 (1973). Maryland District Rule G44 states that "[u]pon filing of the documents required by M.D.R. (G42) (Documents to Be Filed), the clerk *shall* issue a writ of attachment against the property of the defendant . . . .." (emphasis supplied). The Maryland District Rules do not expressly authorize the clerk to perform any of the following functions:

First, the clerk cannot determine if the documents submitted constitute a

---

8. In support of its position the State cites the case of Jernigan v. Economy Exterminating Co., 327 F.Supp. 24 (N.D.Ga.1971). This case, however, supports the State only to the extent that there is a valid governmental interest served by summary seizure. *Jernigan* was decided under the reasoning of *Sniadach,* which did not expressly include the requirement of a state official to review

the creditor's claim. Furthermore, the *Jernigan* court expressly relied on Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla.1970), which was reversed by the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and Brunswick Corp. v. J & P, Inc., 424 F.2d 100 (10th Cir. 1970).

*prima facie* claim against the debtor. Maryland District Rule G42(c) requires the creditor to file with the clerk documents that are the "basis" of his claim. It is possible that the documents could be the "basis" of a claim, but not constitute a *prima facie* contract claim.

Second, he cannot require an *ex parte* hearing with the creditor before issuing the writ of attachment if there is a substantial question on the propriety of the attachment.

Third, the clerk cannot test the sufficiency of the reasons advanced by the creditor if the creditor fails to file supporting documents and explains their absence in an affidavit as permitted by Md.Dist.Ct.R. G42(c). The clerk can only guarantee the existence of a sworn explanation for the documents' omission, not the merit of that explanation.[9]

Last, the clerk cannot investigate the need for prompt action if there is an unusual delay from the return of the second summons *non est* and the filing of the petition for the writ. In one of the instant cases, Roscoe v. Butler, six months elapsed between the second *non est* and the filing of the petition, while

in Wright v. Butler, only five days had passed.[10]

Therefore, the clerk's authority in issuing writs of attachment under Maryland's two *non est* procedure is purely ministerial, and as such fails to satisfy the requirements of due process.[11]

An *ex parte* hearing in every case would not appear to be necessary. *See* United States Industries, Inc. v. Gregg, *supra*, 348 F.Supp. at 1022. It may well be that the vast majority of writs of attachment on two *non ests* can be granted by only a review of the documents filed pursuant to Md.Dist.Ct.R. G42. Due process does demand that the governmental official reviewing the creditor's claim have the power to go beyond the documentary evidence in assessing the necessity for summary attachment, and if need be, deny the issuance of the writ.

For these reasons, this Court holds Maryland District Court Rule G44, as it applies to the *non ests*, unconstitutional, as violative of the due process clause of the fourteenth amendment. Counsel will submit a form of order in accordance with this opinion.[12]

9. The fact that the creditor is permitted by Md.Dist.Ct.R. G42(c) to explain away the lack of documentary evidence brings the facts of these cases close to that of *Fuentes*, in which a bare assertion that one is entitled to the property triggered the issuance of the writ. Fuentes v. Shevin, *supra*, 407 U.S. at 74, 92 S.Ct. 1983. *See also* Shaffer v. Holbrook, 346 F.Supp. 762, 765–766 (S.D.W.Va.1972) ; Sena v. Montoya, 346 F.Supp. 5, 6 (D.N.M.1972). In a recent opinion of the District Court of Maryland for Baltimore County, the Court found that the affidavits used by creditors to obtain writs of attachment on the grounds of fraud (Md.Dist.Ct.R. G40(d)) were legally insufficient because of the conclusory nature of the statements contained therein. "In the future attachments should not issue out of this court unless the affidavits filed in support thereof contain 'clear and convincing' factual allegations." Wolf Distrib. Co. v. Merritt Lumber Co., Inc., Case No. 3584–73, at 8 (Dist.Ct. Balto. County, Sept. 13, 1973).

10. Of course, the fact that there is a six month delay does not in itself require a denial of the writ of attachment. Further investigation could reveal a need for summary attachment.

11. Our research has revealed that only a very few courts have endeavored to define the scope and nature of the authority that a governmental official must retain in order to satisfy the third part of the *Fuentes* test. In United States Industries v. Gregg, 348 F.Supp. 1004 (D.Del.1972), the court upheld a quasi in rem statute because, *inter alia*, the creditor's complaint and affidavit (which revealed the non-residency of the debtor, the existence of the debtor's property of a certain value in the forum state, and the source of the creditor's information) was presented to a state judge before the writ of attachment was issued. The judge then had the authority to determine (1) whether the complaint was bona fide on its face; (2) whether the action was of the kind in which exercise of quasi in rem jurisdiction was appropriate; and (3) whether the value of the property seized bore a reasonable relation to the amount of the claim asserted. 348 F. Supp. at 1022, n. 29. *See* Geisinger v. Voss, 352 F.Supp. 104, 110–111 (E.D.Wis.1972).

12. We recognize that Md.Dist.Ct.R. G44 authorizes the issuance of writs of attachment on original process for reasons other than the return of summons twice *non est*. *See* Md.Dist.Ct.R. G40(a) (non-resident debtor),

This Court declines to certify either the plaintiffs or the defendants as representatives of a class for the reasons stated in the supplemental memorandum to Schneider v. Margossian, 349 F.Supp. 741, 745 (D.Mass.1972) (Three-Judge Court).

(c) (absconding debtor), (d) (fraud), and (e) (non-resident heir and devisee). These provisions are not in issue in the present litigation and we express no view with regard to their constitutional validity. We find it unnecessary also to consider whether in the case of an attachment after two *non ests*, the requirement of a bond in an amount equal to the lesser of the value of the property seized or double the amount of the plaintiff-creditor's claim be posted as a condition precedent to dissolution of the attachment constitutes a second ground of invalidity of the Rule, where there is no independent judicial inquiry into the need for a bond in that amount.