In the Matter of **LAW RESEARCH SERVICES, INC., Debtor-Appellant,**

**Lawrence Bengert, Claimant-Appellant.**

**No. 71 B 598.**

United States District Court, S. D. New York.

Dec. 9, 1974.

Richard Allyn Shaffer, Westport, Conn., for claimant-appellant.

Krause, Hirsch & Gross, New York City, for debtor-appellant; Ellias C. Hoppenfeld, New York City, of counsel.

## OPINION

WERKER, District Judge.

The debtor in this case, Law Research Service, Inc. (LRS), a New York corporation, filed a petition for an arrangement with its unsecured creditors pursuant to Chapter XI of the Bankruptcy Act on June 18, 1971. By order dated June 20, 1972, as amended on July 6, 1972, Bankruptcy Judge Asa Herzog confirmed the debtor's plan of arrangement, and provided for a subsequent hearing of all "objections to claims which have been proved and filed but not allowed or disallowed herein prior to the date hereof." One of the objections raised by debtor pursuant to Judge Herzog's order was directed to Appellant Bengert's claim, which had been filed with the Bankruptcy Court on February 18, 1972.

The grounds for objection were stated in debtor's Motion to Reduce or Expunge Claims as follows:

Claimant asserted a lien against the proceeds of the suit by debtor against Western Union Telegraph Company in the amount of $36,691.77. A default judgment was obtained by claimant against the debtor prior to filing of the petition for Chapter XI. Said default judgment was obtained in the State of Connecticut.

The basis of objections is: Said claim should be set aside for the reason that no process, summons or notice of any kind of the commencement of a suit was served by the claimant on the debtor or anyone on behalf of the debtor.

As a result of debtor's motion, which raised objection to a large group of claims, the controversy as to Mr. Bengert's claim was examined at a plenary hearing on April 9, 1973.[1] This is an

---

1. In an earlier appeal from Judge Herzog's ruling on objection to another such claim, this court determined that the Bankruptcy Judge had had no jurisdiction to decide the

appeal from the order of Bankruptcy Judge Herzog, dated January 9, 1974, sustaining Mr. Bengert's claim against the debtor's objection, but granting it unsecured status only. Each side is appealing from that part of the order which it finds adverse.

A Bankruptcy Judge's findings of fact must be accepted by the District Judge on appeal unless clearly erroneous. Rule 810, Rules of Bankruptcy Procedure. Judge Herzog's findings, which are not clearly erroneous, are as follows:

> The debtor's business was the marketing of computerized legal services using a New York computer and the nationwide communication lines of Western Union Telegraph Company of New York. By advertising in the New York Times the debtor solicited franchisees to sell its services in designated territories.

> Mr. Bengert, a resident of Connecticut, read the advertisement in a Sunday edition of the Times and as a result, entered into an agreement with debtor to sell its services in Fairchild County, Connecticut on a commission basis. Similar franchises were granted to two other persons in Connecticut.

> The franchise agreement provided that the debtor receive all prospective inquiries from franchise advertising and publicity, that it service all inquiries of Fairchild County "subscribers' by using its computer retrieval system, that it handle all billing and accounting, paying a commission to Mr. Bengert on a monthly basis, and

debtor's dispute with another creditor over a secured claim after confirmation of LRS's arrangement plan. *See* In the Matter of Law Research Service, Inc., Debtor-Appellee (Alton W. and Evelyn K. Hemba, Claimants-Appellants), 71 B 598, October 31, 1974. In the case at hand, however, I find that the Bankruptcy Judge did have jurisdiction; the distinguishing factor is that Mr. Bengert, unlike the Hembas, filed a proof of secured claim with the Bankruptcy Court during the arrangement proceedings. The filing of a proof of secured claim "implies that the creditor expects his security to satisfy only a part of the debt and serves to announce that he wishes to participate in the estate, together with the general creditors, for the unsecured balance." 3 Collier on Bankruptcy at 182 (14th ed. 1970). It represents, in effect, the filing of an unsecured claim with respect to so much of the debt as is not covered by claimant's security interest.

In order to allow or disallow this unsecured claim the Bankruptcy Judge, of necessity, must determine its value by valuing the security interest which serves as collateral. Rule 306(d) of the Rules of Bankruptcy Procedure so provides:

> If a secured creditor files a proof of claim, the value of the security interest held by him as collateral for his claim shall be determined by the court, and the claim shall be allowed only to the extent it is enforceable for any excess of the claim over such value.

(Rule 306 was made applicable to these arrangement proceedings by General Order 48.

In July, 1974 General Order 48 was superceded by Rule 11-33(e) of the new Rules Under Chapter XI of the Bankruptcy Act, which likewise incorporates Rule 306.)

The LRS objection to Mr. Bengert's claim, quoted above, requested the Bankruptcy Judge to go beyond valuation of the Bengert security interest, and to determine the validity of the Bengert lien. According to Rule 306(c) of the Rules of Bankruptcy Procedure, such a request initiates an "adversary proceeding" as defined by Rule 701, and entitles the Bankruptcy Court, with the parties' consent, to determine the validity of the security interest. 3 Collier on Bankruptcy at 335 (14th ed. 1970). No objection was made below to Judge Herzog's exercise of jurisdiction, and there is no doubt that it fell within the Bankruptcy Court's jurisdictional limits, as prescribed by section 2(a)(7) of the Bankruptcy Act, to "cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto."

Although normally the Bankruptcy Court's jurisdiction terminates upon confirmation of a debtor's Chapter XI plan of arrangement, section 369 of the Bankruptcy Act provides for an extension of jurisdiction as to claims "affected by the arrangement which have been filed within the limitations as to time . . . but have not been allowed or disallowed prior to confirmation." To the extent that Mr. Bengert's security interest did not fully cover it, his claim was one "affected by" the LRS arrangement. Judge Herzog's post-confirmation exercise of jurisdiction therefore was entirely proper.

that it control all promotion of the Bengert franchise; claimant Bengert was merely a sales agent for debtor.

Pursuant to the agreement, debtor mailed letters to attorneys in Fairchild County advertising its services. As a result thereof Mr. Bengert received responses from two or three attorneys and paid sales calls to them. He sold a Thesaurus (index to LRS services by subject and code number) to one attorney, who received it by mail from debtor, and was billed for it by debtor. He sold another LRS service referred to as "a special inquiry" to "someone in Connecticut," who was also billed by debtor from New York.

The debtor corresponded with Mr. Bengert about arranging to furnish its services to law libraries in Connecticut, but nothing was done to implement this idea.

When debtor breached its contracts with its franchisees, as a result of Western Union's failure to allow the use of its computer, Mr. Bengert had the Sheriff garnish the Western Union debt to LRS by serving copies of a writ, summons and complaint for breach of contract on the Connecticut Secretary of State as agent designated for that purpose by Western Union. The Secretary of State mailed a copy to Western Union.

Mr. Bengert also sought *in personam* jurisdiction over the debtor by serving two other copies of the writ, summons and complaint on the Connecticut Secretary of State pursuant to the Connecticut long-arm statute. The Secretary mailed a copy to the debtor, but the mail was returned marked "Not Accepted."

Debtor's president was aware of the suit and the garnishment in January 1970. Debtor deliberately defaulted in the action.

Default judgment was entered in the Connecticut action on May 19, 1970.

The issues to be considered on appeal are whether the Bankruptcy Judge erred in finding as a matter of law (1) that prejudgment garnishment of the Western Union indebtedness, without prior notice and hearing, violated the due process clause of the Fourteenth Amendment, thus depriving Mr. Bengert's claim of secured status; and (2) that *in personam* jurisdiction was properly obtained over the debtor in Connecticut.

■■ The nub of the first issue is whether the fact that a garnishment is made in order to secure quasi-in-rem jurisdiction insulates it from the due process requirements established by the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). This court thinks not. The Court in *Fuentes* found that outright seizure of property without prior hearing was justified in certain extraordinary situations only if three factors, discussed below, were present. This court finds that as only two of those factors were present in the Bengert garnishment, that garnishment violated due process and did not establish a valid lien against LRS.

In Fuentes v. Shevin, *supra,* the Supreme Court ruled that temporary deprivation of property without prior notice or opportunity for a hearing, and without judicial participation, violates the due process clause even where the chances of a wrongful taking are reduced by the requirement that the creditor post a security bond. Mitchell v. W. T. Grant Co., 416 U.S. 600, 614, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). The Court recognized, however, that there are "extraordinary situations" that justify postponing notice and the opportunity for a hearing. It went on to state:

> These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the per-

son initiating the seizure has been a governmental official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.*, 407 U.S. at 90–91, 92 S.Ct. at 1999–2000. These three factors common to each seizure case may be said to comprise a tripartite test which, at a minimum, must be satisfied in order to justify departure from normal due process requirements. Roscoe v. Butler, 367 F. Supp. 574, 579 (D.Md.1973); U. S. Industries, Inc. v. Gregg, 348 F.Supp. 1004, 1021 (D.Del.1972).

In footnote 23 to the passage quoted above the Court cites Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), a quasi-in-rem case in which only the first two factors of the tripartite test are present.[2] The question therefore arises whether in citing *Ownbey* the *Fuentes* Court was affirming as fully consonant with due process the

*Ownbey* procedures, and was thus absolving quasi-in-rem attachment from the necessity of meeting the third part of the tripartite test. This court does not believe that it was, for in *Ownbey* the constitutionality of the jurisdictional attachment was never challenged; the debtor in fact argued for its continuation.

*Fuentes*, furthermore, cannot be read as endorsing all aspects of the 1921 *Ownbey* decision, if only because the principal *Ownbey* holding, that a defendant's access to the civil courts can be conditioned upon the posting of a bond, has since been overtaken by significant changes in the law. *See*, Boddie v. Connecticut, 401 U.S. 371, at 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Lastly, despite any doubt which might exist as to whether the *Fuentes* Court intended the tripartite test to be applied to quasi-in-rem situations, courts and commentators alike have so construed the decision.[3] *See, e. g.*, U. S. Industries, Inc. v.

2. Footnote 23 states:

> Of course, outright seizure of property is not the only kind of deprivation that must be preceded by a prior hearing. *See, e. g.*, Sniadach v. Family Finance Corp., *supra*. In three cases, the Court has allowed the attachment of property without a prior hearing. In one, the attachment was necessary to protect the public against the same sort of immediate harm involved in the seizure cases—a bank failure. Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768. Another case involved attachment necessary to secure jurisdiction in state court—clearly a most basic and important public interest. Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837. It is much less clear what interests were involved in the third case, decided with an unexplicated *per curiam* opinion simply citing *Coffin Bros.* and *Ownbey*. McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975. As far as essential procedural due process goes, *McKay* cannot stand for any more than was established in the *Coffin Bros.* and *Ownbey* cases on which it relied completely.

In *Ownbey*, Delaware plaintiffs attached a nonresident's shares in a Delaware corporation, in order to establish quasi-in-rem jurisdiction. The writ of attachment issued automatically upon plaintiff's filing an affidavit with the court clerk and posting a bond; under the attachment statute, the clerk had no discretion to determine whether attachment was justified in the particular instance. 256 U.S. at 101, n. 1, 41 S.Ct. 433. The need for prompt attachment without prior notice and hearing if attachment is to be had at all in cases like *Ownbey* is obvious. As the basis of a quasi-in-rem action is the power of the state over property located within its borders (Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)), immediate attachment is essential in such actions in order to establish jurisdiction before the alleged debtor removes his property from the state. Pennoyer v. Neff, 95 U.S. 714, 728, 24 L.Ed. 565 (1877). *See also*, Lebowitz v. Forbes Leasing & Finance Corp., 456 F.2d 979, 981 (3d Cir.), cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972); U. S. Industries, Inc. v. Gregg, *supra*, 348 F.Supp. at 1021. *Cf.* Mitchell v. W. T. Grant Co., *supra*, 416 U.S. at 608, 94 S.Ct. 1895.

3. Before *Fuentes* was decided, the Third Circuit, relying solely upon a citation to *Ownbey* in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), decided that the absence of review by a governmental officer (later to become the third part of the tripartite test) was

Gregg, *supra*, 348 F.Supp. at 1021 ("While the opinion in the *Fuentes* case should not be read as endorsing all of the views stated in the *Ownbey* opinion, *Fuentes* does indicate that seizures of the kind made here [sequestration of a nonresident defendant's stock] are constitutionally permissible when the tripartite test set forth there is met."); Quasi-in-Rem Jurisdiction and Due Process Requirements, 82 Yale L.J. 1023, 1026 (1973). *Cf.* Roscoe v. Butler, *supra*, 367 F.Supp. at 579. *See also* Arnett v. Kennedy, 416 U.S. 134, 188, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (White, J., concurring).

■ Indeed, there is no reason why the third requirement of the tripartite test should not be enforced when the plaintiff is seeking to establish quasi-in-rem jurisdiction. It in no way interferes with the quasi-in-rem mechanism or its goals, yet it minimizes the chance that attachment will be abused by creditors without valid claims, and it guarantees to the defendant at least a modicum

of objectivity in the *ex parte* decision to immobilize his property. As the determination of what due process requires in a given context depends upon a balancing of the governmental interests involved and the private interests affected, Mitchell v. W. T. Grant Co., *supra*, 416 U.S. at 624, 94 S.Ct. 1895 (Powell, J., concurring), there is no reason to exclude a requirement that benefits both while harming neither.

■ In light of the above, this court concludes that in quasi-in-rem situations, prior notice and the opportunity for a hearing may be dispensed with only so long as the *Fuentes* tripartite test is met. In Mr. Bengert's Connecticut action against LRS, the attachment made did not conform in full with the *Fuentes* requirements; under the foreign attachment statute applicable at the time, the writ issued automatically, without benefit of governmental review, upon plaintiff's (then) unsubstantiated assertion that he had a claim for damages against the defendant.[4] Although

---

"not a deficiency of constitutional proportions" in a quasi-in-rem situation. Lebowitz v. Forbes Leasing & Finance Corp., *supra*. In doing so, it upheld a district court decision which was made only because the District Judge felt constrained to follow precedent:

> The thrust of the analysis contained in this opinion is directed to the theory that, were it to have *Ownbey* and *McKay* before it directly today, the United States Supreme Court might well decide them differently. In view, however, of the language of *Sniadach*, which, at least, recognizes the vitality of *Ownbey* and *McKay*, even if it does not impliedly approve of them, a United States District Judge is not at liberty to ignore their precedential effect.

Lebowitz v. Forbes Leasing & Finance Corp., 326 F.Supp. 1335, 1353 (E.D.Pa.1971). In *Lebowitz*, a resident of Pennsylvania attached the Pennsylvania bank account of a nonresident corporation in order to obtain quasi-in-rem jurisdiction over it. Under the Pennsylvania attachment statute, this was accomplished without notice to the defendant and without a hearing by plaintiff's filing an affidavit with the court clerk, who automatically issued the writ. No bond or other security from plaintiff was required. This court believes that in light of *Fuentes*, Lebowitz would be decided differently today.

4. The statute under which Mr. Bengert garnished the debt owed LRS by Western Union, and thus sought to establish the lien which he now claims gives him the status of a secured creditor, was § 52–329 of the Connecticut General Statutes:

> When the effects of the defendant in any civil action in which a judgment or decree for the payment of money may be rendered are concealed . . . or when a debt is due from any person to such defendant, . . . the plaintiff may insert in his writ a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, . . . with such agent, trustee or debtor of the defendant . . . or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant . . . shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover.

The Supreme Court examined this statute in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and found that it operates without benefit of the exercise of judicial authority:

> [In Connecticut] Garnishment occurs at the beginning of the suit upon the direc-

the Connecticut court has since concluded that Mr. Bengert's claim was indeed valid, he could have just as easily immobilized the LRS property had his claim been totally and transparently unfounded. Due process requires that a governmental official with power to go beyond the documentary evidence presented review the creditor's claim, assess the necessity for summary attachment and if appropriate, deny the writ. Roscoe v. Butler, *supra*, 367 F.Supp. at 582. As the Bengert garnishment was effected without such review, it deprived LRS of due process of law in violation of the Fourteenth Amendment. This court therefore must sustain Judge Herzog's conclusion that the garnishment, and the lien thereby established was invalid; Mr. Bengert's claim, as a result, is not entitled to secured status.

■ As to the second issue which this court must consider on appeal, the Bankruptcy Judge's decision that the Connecticut Court validly exercised *in personam* jurisdiction over LRS is likewise sustained. The Connecticut long-arm statute which Mr. Bengert invoked in asserting *in personam* jurisdiction is section 33–411 of the Connecticut General Statutes. That section provides in relevant part:

> (a) Any process, notice or demand in connection with any action or proceeding required or permitted by law to be served upon a foreign corporation . . . may, when timely made, be served upon such corporation . . . as follows:

(1) When the secretary of the state and his successors have been appointed such corporation's attorney for service of process, by leaving two true and attested copies thereof together with a fee of five dollars at the office of the secretary of the state or depositing the same in the United States mails, by registered or certified mail, postage prepaid, addressed to such office. The secretary of the state shall file one copy of such process and keep a record of the date and hour of such receipt. He shall immediately notify the corporation of such receipt, and within two days after such service, forward by registered or certified mail the other copy of such process to the corporation . . . . Service so made shall be effective as of the date and hour recorded by the secretary of the state.

(b) Every foreign corporation which transacts business in this state in violation of section 33–395 or 33–396 [*i. e., without a certificate from the secretary authorizing it to do so*] shall be subject to suit in this state upon any cause of action arising out of such business.

(c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclu-

---

tion of the plaintiff's lawyer, acting as a Commissioner of the Superior Court. . . . "The plaintiff or his attorney merely includes in his writ of summons a direction to the sheriff to make an attachment or serve garnishment process." 1 E. Stephenson, Connecticut Civil Procedure 151 (2d ed. 1970). . . . Connecticut appears to be one of the few States authorizing an attorney for an alleged creditor to garnish or attach property without any participation by a judge or clerk of the court. 405 U.S. 554–555, 92 S.Ct. at 1123. On remand from the Supreme Court in *Lynch*, a three-judge district court found under the aegis of

*Fuentes* that where applied by a Connecticut corporation to garnish the bank accounts of other Connecticut residents allegedly in its debt, § 52–329 was unconstitutional in that it deprived the account holders of property without notice and the opportunity for a prior hearing. 360 F.Supp. 720 (D.Conn. 1973). As a result of this district court decision, § 52–329 has been revised.

Appellant Bengert argues that the district court decision in *Lynch* should not be given retroactive effect so as to invalidate his garnishment. In light of this court's independent conclusion that his garnishment violated due process, the issue of *Lynch* retroactivity need not be reached.

sively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or . . ..

(d) In any action brought under subsection (b) or (c) of this section . . . the secretary of the state shall be deemed the agent and attorney of the corporation in this state and service of process on such corporation shall be made as provided in subsection (a) of this section, . . . .

The Bankruptcy Judge below found that the debtor "purposefully availed itself of the privileges of conducting activities in Connecticut, thus invoking the benefits and protections of its laws;" he found it fair, therefore, under the standard of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that LRS be subject to that state's jurisdiction. In so finding, Judge Herzog did not specifically state which subsection of the long-arm statute, (b) or (c), he relied upon. However, it is clear to this court that at least *in personam* jurisdiction was properly established under subsection (c).[5]

Under the terms of the franchise agreement, the entirety of Mr. Bengert's performance, and a substantial proportion of LRS's performance was to take place in Connecticut. LRS was to arrange and control all franchise advertising and promotion in Connecticut, with a view towards directing Connecticut attorneys to contact Mr. Bengert about subscribing to the service. It was to respond to the inquiries of such subscribers (*i. e.*, forward the answers produced by the computer in New York to Mr. Bengert in Connecticut for him to transmit to the Connecticut attorneys). Lastly, it was to, and did, send into Connecticut copies of the Thesaurus and bills for services to Fairchild County

subscribers, as well as commission payments to Mr. Bengert himself.

In Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D. Conn.1968), Chief Judge (now Court of Appeals Judge) Timbers stated of § 33–411(c):

The section must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out of a contract made or to be performed here so long as there are sufficient total contacts to meet constitutional requirements. The qualifications engrafted on the term "transacting business" in section 33–411(b) . . . [see note 5, *supra*] . . . do not pervade the other provisions of Connecticut's long-arm statute, which, taken as a whole, is meant to extend Connecticut's jurisdictional reach to the constitutional limits. Winchester Electronics Corporation v. General Products Corporation, 198 F.Supp. 355, 358 (D.Conn.1961); Sheridan v. Cadet Chemical Corp., 25 Conn.Supp. 17, 20, 195 A.2d 766, 768 (Super.Ct. 1963).

The constitutional requirements which must be met here are those first prescribed by the Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) i. e., that the defendant have certain minimum contacts with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." This *International Shoe* rule, which stressed the nature and quality of the defendant's contacts with the forum state rather than their quantity, was reinforced in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957), where the Court sustained jurisdiction on contacts less substantial than those found here. The Texas defendant in *McGee*

---

5. This court ventures no comment as to whether *in personam* jurisdiction was obtained under subsection (b). Unlike the New York "transact[ion of] business" long-arm subsection, after which § 33–411(b) was modeled, the Connecticut subsection has not been interpreted in the broadest sense constitutionally permissible. *See* Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550, at 554 (D.Conn.1968).

had no agents and no offices in the forum state of California, had written no insurance policies in that state other than that of plaintiff, and had simply mailed one certificate of insurance to plaintiff there. Although the Court's opinion included some language emphasizing considerations peculiar to the field of insurance, the Court of Appeals for the Second Circuit has read the holding of that decision as a general principle: "that the due process clause imposes no bar to a state's asserting personal jurisdiction, of course on proper notice,[6] in favor of a person within its borders who suffers damage from the breach of a contract the defendant was to perform there . . . ." Buckley v. New York Post Corp., 373 F.2d 175, 181 (1967). *See also* McFaddin v. National Executive Search, Inc., 354 F.Supp. 1166 (D.Conn. 1973); and Scher v. HMH Publishing Co., Inc., 289 F.Supp. 917 (D.Conn. 1968).

The defendant here maintained more than minimal contacts with the state of Connecticut. Indeed, it maintained general business connections evidenced by the three franchises it had established in the state, the mass mailings to Connecticut attorneys to solicit their patronage, and the Connecticut situs of Mr. Bengert's initial interest in the LRS franchise contract. These contacts could well have required the exercise of Connecticut jurisdiction and law for the debtor's benefit. It is entirely fair, therefore, that LRS be subjected to Connecticut jurisdiction on Mr. Bengert's breach of contract claim, a cause of action arising therefrom.

Because the Connecticut court validly exercised *in personam* jurisdiction over LRS, Mr. Bengert correctly relied on the judgment which it rendered in his favor to prove his claim below against the debtor. However, as the lien on which

he relied to provide collateral for his claim has been found invalid, he cannot satisfy his claim out of funds set aside by the Bankruptcy Court for secured creditors. He must be satisfied instead with the funds provided unsecured creditors under the terms of the debtor's confirmed plan of arrangement.

The Bankruptcy Judge's decision is in all respects affirmed.

So ordered.

---

6. The defendant corporation here was, by the terms of the Connecticut long-arm statute, afforded proper notice when the Secretary of State was served with process, and forwarded a copy of the papers to it. It is self-evident that long-arm jurisdiction cannot and should not be defeated simply by the cunning refusal of a defendant to accept the complaint when it arrives through the U. S. mail. *See e. g.,* Bersch v. Drexel Firestone, Inc., 389 F.Supp. 446 (S.D.N.Y.1974).