BUGG *v.* BROWN, ET AL.

[No. 337, September Term, 1967.]

100

*Decided October 9, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ.

*Ernest C. Dickson* for appellant. *Pink Bugg* filed brief in proper person.

No brief filed for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The altercation which provoked this litigation took place shortly after midnight on 19 October 1964 at the Whistle Stop in Perryville, Cecil County. The appellant (Bugg) and the appellees Cash and Carpenter, sitting in their taxicabs, were awaiting the arrival, on the late buses, of sailors returning to the Naval Training Station at Bainbridge, 3 miles distant. Cash was first in line; Carpenter was next; Bugg was further back. When the first bus arrived Bugg, contrary to the prevailing custom, "shot up, cut everybody off, loaded up a full load and went on to Bainbridge." Upon his return, ahead of the others, he became "first in line for the next bus." It is no surprise that Cash and Carpenter took a rather dim view of Bugg's conduct.

Bugg's witnesses testified that Cash, who claims Bugg gave him "a good cussing," grabbed Bugg, aged 70, by the shirt collar, held him at arm's length and said, "Don't you never bring those words through your mouth again for I am not Mr. Gaddy you are fooling with." Cash then "backed him around * * * [behind another taxicab] and let him go." They testified further that shortly thereafter Carpenter "slapped him [Bugg] across the face and broke * * * [his] glasses," knocked him down and then hit him "in the jaw" as he tried to get up. Bugg, they said, ran in back of the Whistle Stop, "crying and begging * * * [Carpenter] not to hit * * * [him] no more." A driver named Hall took Bugg to the hospital.

Bugg filed suit against Cash, Carpenter and Ralph Brown on 31 August 1965. The declaration was signed by two members of a Baltimore law firm. A member of the Cecil County bar entered his appearance for Bugg on the same day. All of them withdrew from the case in February 1967. The trial was held before Judge Mackey and a jury on 17 October 1967. Bugg appeared in proper person. He said he had issued writs of summons for witnesses, including himself, but there is nothing in the record to show it. He advised the court that he planned "to get a lawyer" but he did not ask for a continuance. Judge Mackey was of the opinion that Bugg had had "plenty of time to get a lawyer" (8 months had passed since his attorneys withdrew). "So [said the judge] we are going ahead with the case. * * * You are representing yourself."

Although appellees pleaded only the general issue, counsel, in his opening statement, declared he would show that Bugg is "hotheaded," that he is a "litigious, contrary individual," that he was "known to carry a pistol or a knife," that he attacked Carpenter, that on other occasions he had been convicted of assault, and that on the day following the incident he "was carrying a shotgun around looking for" Cash and Carpenter.

During his direct examination, James Gaddy, produced as a witness on behalf of Bugg, was questioned by the trial judge. The following transpired:

"Q. You say [that you saw] nothing unusual about his face or his head or anything?

"A. He looked that night just about like he is look-

ing right now. He always has been a bad man, ever since I have been knowing him. Bad man. Fights with me every time he gets in conversation with me. Bad man. Of course, he is my neighbor. We are neighbors. "BY MR. BUGG:

"Q. I didn't ask you those questions, Mr. Gaddy.

"A. Well, you asked me—

"Mr. Bugg: I ask that be struck out.

"The Court: Well, I will ask you the jury to disregard it as not being responsive to Mr. Bugg's question, and not really having any bearing on this case. I will ask jury to disregard those remarks."

In his cross-examination by counsel for appellees the following transpired:

"Q. You have already said you don't know anything about the 19th. What is Mr. Bugg's reputation for good order, sobriety, peacefulness, and general reputation in the neighborhood where he lives? Is it good or bad?

"A. (Witness indicating card in hand.)

"Q. Answer my question.

"A. It is bad.

"Mr. Bugg: I object to that.

"A. It is bad. Bad as anybody I have met since I have been in the world, and I will soon be 70 years old, December 27th.

"The Court: I overrule the objection.

"A. He is the baddest man I ever met."

What follows is an excerpt from the cross-examination of Charles Woodrow Calary, another witness for Bugg:

"Q. Now, you know Mr. Bugg, don't you?

"A. Yes, sir.

"Q. What is his general reputation for peace and sobriety and good order in the community in which he lives?

"Mr. Bugg: I object to that.

"The Court: Just a minute. Mr. Evans I will hear you on the propriety of that question.

"Mr. Evans: I think this man is charged with assault. The defense is going to be in here, as far as Mr. Carpenter is concerned, that Pink Bugg is a pugnacious man, he has been in trouble with the law and charged with assault before, and I want to know if Mr. Calary knows him, what his reputation is for good order and peacefulness in the community.

"Mr. Bugg: I object to that.

"Mr. Evans: I think it is relevant.

"Mr. Bugg: I object to that. We are only concerned in this case—I don't think that ties in with this case anywhere, where I am concerned with the law. And I think as far as my record—

"The Court: Excuse me, this question is proper in testimony as a character witness, but I can't recall this question being—

"Mr. Evans: This case charges assault, and I want to know what his general reputation is in the community, if Mr. Calary knows it, as to good order, peacefulness and being law abiding.

"The Court: I am going to sustain the objection, Mr. Evans."

At the conclusion of Bugg's case counsel for appellees moved "for a dismissal, a directed verdict of acquittal" on the ground there was "no evidence of the amount of damage, money-wise, or otherwise." The trial judge appears to have agreed. Bugg had not met the burden, he said, of "satisfying the jury by a preponderance of the evidence as to the extent of his damages or anything that goes beyond, in the mind of the court, mere speculation or conjecture."

We do not find in the record anything which adds up to a prima facie case against Brown. Indeed, that he was home in bed at the time seems to be unchallenged.

Bugg's brief in this Court was filed in proper person but the case was argued by counsel. There was no brief and no appearance for the appellees.

I.

In 86 C.J.S. *Torts* § 22 (1954) will be found a quite ade-

quate statement of the general rule in respect of the necessity for proving damages:

> "Although damage is an essential element of tort, a fundamental distinction is to be observed between two classes of torts, one composed of legal wrongs in themselves constituting invasions of right and thus giving rise to legal damage, the other of breaches of duty not necessarily violative of legal rights and with which some actual express damage must concur in order to establish the violation of right essential to tort. In the former class, damage flows from the wrongful act, itself injurious to another's right, although no perceptible loss or harm accrues therefrom; in the latter, however, some specific actual damage is a condition precedent to the tort."

In the Restatement (Second) of Torts § 18 (1965) it is said:

> "Since the essence of plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed."

The following statement is taken from Prosser's *Law of Torts* § 9 at 33-35 (1964):

> "Proof of the technical invasion of the integrity of the plaintiff's person by even an entirely harmless, but offensive, contact entitles him to vindication of his legal right by an award of nominal damages, and the establishment of the tort cause of action entitles him also to compensation for the mental disturbance inflicted upon him, such as fright or humiliation."
>
> \* \* \*
>
> "The defendant is liable not only for contacts which do actual physical harm, but also those relatively trivial ones which are merely offensive and insulting. Spitting in the face is a battery, as is forcibly removing

the plaintiff's hat, or any other contact brought about in a rude and insolent manner. 'The least touching of another in anger,' said Chief Justice Holt, 'is a battery;' and no harm or actual damage of any kind is required."

To the same effect *see also Richardson v. Boato,* 207 Md. 301, 302-06, 114 A. 2d 49 (1955).

In *Mason v. Wrightson,* 205 Md. 481, 109 A. 2d 128 (1954), the plaintiff, an attorney, over his strenuous objection, was required by a police sergeant to stand up and be searched. At the trial of his suit against the sergeant for assault and battery he offered no proof of pecuniary loss. The trial judge found for the defendant on the theory that the wrong done was at most technical and that no actual damage was established. We reversed and entered a judgment for the plaintiff for one cent damages and costs. Chief Judge Brune, for the Court, said:

> "The remaining question is whether the appellant is entitled to recover any damages, and if so, how much. It would be very difficult, if not impossible, to estimate the appellant's damages on a pecuniary basis, and there was no proof thereof. Though there are exceptions to this rule, as in conspiracy cases, where damage is the gist of the action or an essential element of the tort (*Horn v. Seth,* 201 Md. 589, 95 A. 2d 312), we do not regard this case as falling within such exceptions, but as coming within the rule recognized in *Coca-Cola Bottling Works v. Catron,* 186 Md. 156, 164, 46 A. 2d 303, 306; and *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 4 A. 2d 440, under which, as was said in *Horn v. Seth,* 201 Md. 589, 597, 95 A. 2d 312, 316, in referring to these cases, '* * * if damage is shown in a tort action, the defendant is not entitled to a directed verdict merely because the monetary amount is not proven, even though the defendant may be entitled to an instruction, if requested, limiting recovery to nominal damages.' We think that the humiliation incidental to the search here made does show some damage. As was said in *Baltimore v. Appold,* 42

Md. 442: 'It is well settled that every injury to the rights of another imports damages, and if no other damage is established, the party injured is at least entitled to a verdict for nominal damages.' " *Id.* at 488-89.

It is obvious that Bugg has made out a prima facie case against Carpenter. It must be assumed that he experienced some pain and suffering (he said he was "still suffering" with his shoulder and jaw) as a result of his beating. It is well settled that a pecuniary basis need not be established to make pain and suffering compensable and the jury's determination of the amount thereof will not ordinarily be disturbed. As against Cash, Bugg would clearly have been entitled to an award of nominal damages had the jury found in his favor on the issue of liability.

## II.

Bugg contends the trial judge "should not have permitted counsel for defendants to show bad character of plaintiff by cross-examination of plaintiff's witness when plaintiff did not show his character on direct examination of said witness." Since, for reasons already stated, the case will be remanded, we shall not undertake to resolve this contention. Nor shall we comment on the anomalies apparent in the record. However, since it seems likely the case will be tried again, we shall set forth what seem to be the applicable rules of evidence. We have assumed, of course, that there will be some amendment to the pleadings, Maryland Rule 342 c 2 (g), and that the parties will arrange to produce their testimony in the proper manner and at appropriate times.

In civil actions evidence of the general reputation of the plaintiff generally is not admissible unless it is attacked or unless the nature of the proceedings puts the reputation of the parties in issue. *Tully v. Dasher,* 250 Md. 424, 438, 244 A. 2d 207 (1968); *Sappington v. Fairfax,* 135 Md. 186, 188, 108 A. 575 (1919). In 29 Am. Jur. 2d *Evidence* § 337 (1967), it is said that "usually in actions for assault and battery, evidence of the character or reputation of either the plaintiff or the defendant is admissible." The following is quoted from a note in 154 A.L.R. 121, 129 (1945):

"In assault and battery cases evidence of the plaintiff's reputation for turbulence and quarrelsomeness may become admissible either because the defendant pleads self-defense or because it is uncertain, on the evidence, as to whether the plaintiff or the defendant was the aggressor, or, in some cases, on the issue of damages."

In 6 C.J.S. *Assault and Battery* § 41 (a) (1937), it is said:

"As a general rule, in actions for assault or assault and battery, the character of the parties thereto is not in issue, and evidence with respect thereto is inadmissible either for or against a party, unless it is first attacked or supported by the adversary, or placed in issue by the nature of the proceeding itself, as where there is a dispute as to who was the aggressor."

\* \* \*

"Where justification is pleaded by way of self-defense, it is competent to show the character of plaintiff as being quarrelsome or turbulent, provided such fact has been brought to the knowledge of defendant prior to the assault, and this is so even though plaintiff has offered no evidence of his good character in that respect. This principle applies where the defense is that force was used to resist an assault on one whom defendant has right to defend.

"Where the question of who was the aggressor is a disputed issue in the case, evidence of plaintiff's character or reputation for turbulence is admissible, even though defendant did not have knowledge of such character before the assault."

See also, *Peoples Loan & Inv. Co. v. Travelers Ins. Co.,* 151 F. 2d 437 (8th Cir. 1945) ; *Cain v. Skillin,* 219 Ala. 228, 121 So. 521 (1929) ; *Phillips v. Mooney,* 126 A. 2d 305 (D. C. Mun. App. 1956) ; *Niemeyer v. McCarty,* 221 Ind. 688, 51 N. E. 2d 365 (1943).

### III.

We think Judge Mackey was justified, in the circumstances, in refusing to give Bugg a continuance. Whether his ruling in

108

respect of the so-called doctor's bills or "hospital records" was correct need not detain us. We shall assume that Bugg, if he again elects to appear in proper person, will seek information, before the trial, as to the proper procedure for the admission of these items into evidence.

Accordingly we shall reverse the judgment of the trial court in favor of Cash and Carpenter and remand the case for a new trial. The judgment in favor of Brown will be affirmed.

> *Judgment in favor of appellee Brown affirmed.*
>
> *One-third of the costs to be paid by appellant.*
>
> *Judgment in favor of appellees Cash and Carpenter reversed.*
>
> *Case remanded for a new trial.*
>
> *The remaining two-thirds of the costs to abide the result below.*