## BUGG ET AL. *v.* CECIL COUNTY COMMISSIONERS

[No. 380, September Term, 1970.]

*Decided April 13, 1971.*

508

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Submitted by Pink Bugg, in proper person, for appellants.

Submitted by *William B. Calvert* and *Judson P. Garrett, Jr.*, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

What follows is yet another [1] canto in the saga of Pink Bugg, Cokesbury's dauntless appellant. As is his wont, he has come here without counsel,[2] making no argument and submitting on his brief, although we think calling it a brief may be putting it a little too high. Unhappily for Bugg, however, he, like the Bourbons, seems never to learn anything nor ever to forget anything. Here he has taken on a rather formidable adversary, viz., the County Commissioners of Cecil County (Commissioners), but to what purpose is not altogether clear. We shall first set forth the facts as we understand them.

On 10 November 1969 "Pink Bugg and Sons" [3] filed against the Commissioners, in the Circuit Court for Cecil County, a "Complaint for Damage." Beginning *in medias*

---

1. *See* Bugg v. Carpenter, 261 Md. 161 (1971); Bugg v. Trustees of Cokesbury Baptist Church, 252 Md. 59 (1969); Bugg v. Brown, 251 Md. 99 (1968); Bugg v. State Roads Comm'n, 250 Md. 459 (1968).
2. In proper person, not *in forma pauperis* as stated in the Commissioners' brief.
3. Responding to interrogatories Bugg disclaimed the existence of a partnership and stated he was the owner of the business. He said also that his sons Gary and Willie were merely employees.

*res* it sets forth almost verbatim what we have identified as Sections 452 and 453 of Art. 8 of the Code of Public Local Laws (1930 Edition) as they were enacted by Chapter 334 of the Laws of Maryland of 1951,[4] dealing with the regulation of taxicabs in the 7th Election District of Cecil County. There follow vague charges of nonfeasance and misfeasance and a reference to two cases entitled "State of Maryland v. Pink Bugg," #1534 and #1535 on the criminal docket, which seem to have been tried in February 1967; the outcome of these trials was not mentioned nor was their significance established. Bugg demanded "judgment in ejection" against the Commissioners or, in the alternative, damages in the sum of $75,000. He prayed a jury trial. Invoking Maryland Rule 323 b the Commissioners filed a motion raising a preliminary objection claiming sovereign immunity. At the same time they demanded the particulars of Bugg's claim. Several months later, after a hearing, the motion was overruled. Although the docket entries state that the "court overruled [the] motion raising preliminary objections" the Commissioners say it was sustained in respect of the "tort claims." Bugg's bill of particulars, which appears to have been prepared but not signed by counsel, charges the Commissioners with failing "to comply with or enforce the regulatory or statutory provisions from June of 1951 to the date of the filing" of the "Complaint." Lest we misinterpret them, we quote the remaining particulars:

"II

"The Defendants failed to execute and deliver unto the Plaintiff a deed for the property which he had purchased at a tax sale, and further have erected barriers to prevent the Plaintiff from access from the public road to his property. The Defendants failed to provide stand and telephone at the filling station near the Whistle Stop.

---

4. Repealed by Chapter 223 of the Acts of 1967.

"III

"The Plaintiff has been denied the use and ownership of the land in question and at the filling station near the Whistle Stop, has suffered a substantial loss of business due to the failure of the County Commissioners to provide services they had contracted to provide.

"IV

"The name and address of the place of operation of the taxicabs is the filling station near the Whistle Stop, Perryville, Maryland. The overrate charge began in the year 1960 and was paid to the County Commissioners of Cecil County."

"I

[A supplemental particular filed a week later]

"That this action and claim are brought pursuant to Article 75, Section 33 and 34 inclusive of the annotated Code of Maryland." [5]

Some weeks later the Commissioners, "as a plea to the alleged ex contractu cause of action," declared they were never indebted as alleged, that they never promised as alleged, that Bugg did not give "written notice of the claim within 90 days thereof" and that the cause of action did not accrue within three years. Responding to interrogatories served on him some months later Bugg stated:

"6. *There was no written contract between the parties,* other than the taxi permit issued to the Plaintiffs by the County Commissioners of Cecil County.

---

5. § 33 of Art. 75 in both the 1969 Repl. Vol. and the 1965 Repl. Vol. is as follows:

"In all actions at law, where the title to land is in question, it shall not be necessary for any party to any such action to prove that the lands in controversy have been patented; but a patent shall in all cases be presumed in favor of the party showing a title otherwise good; and actual enclosure shall not be necessary to prove possession, but acts of exclusive user and ownership, other than enclosure, may be given in evidence to the jury to prove possession."

§ 34 was repealed by Chapter 36, § 1 of the Acts of 1962.

"7. *There are no oral contracts between Pink Bugg and the Defendant Board,* however, he has appeared before them on numerous occasions to discuss this matter, as set forth in Minutes of the County Commissioners attached hereto and made a part hereof.

"8. *Oral notice* was given in 1964 and on numerous occasions thereafter, however, *the first written notice* was given by the institution of this action." (Emphases added.)

Shortly thereafter the Commissioners moved for a summary judgment "as to any ex contractu claim." Three days later Bugg filed a written request "that the case scheduled on 9/21/70 be heard before the court instead of jury." The docket entry for 21 September 1970 is as follows:

"Sept. 21, 1970—Court trial
Hon. J. Albert Roney, Jr., Presiding
David T. Pinder, Court Reporter
*Appearance of John P. Walsh, Esq. entered for Mr. Bugg.*
Witnesses sworn. Testimony heard and taken
The Court will allow the Plaintiff to answer the Motion for Summary Judgment within 10 days.
Counsel agree that this case be limited to contractual matter." (Emphasis added.)

The transcript contains no other information in respect of the proceedings on 21 September.

On 29 September Mr. Walsh filed Bugg's answer to the Commissioners' motion for summary judgment. It alleges "a genuine dispute" as to the facts in that

" * * * an Agreement was entered into between the Plantiffs and the Defendants whereby for a consideration of $12.00 per year paid by the Plaintiffs to the Defendants each and every year from 1951 through the year 1968, the Defendants agreed to provide and maintain a tele-

phone for the Plaintiffs at a taxi cab stand which was to be designated by the Defendant as so agreed, and also as required by the provisions of Article 8, Section 458 (a) and (b) of the Public Local Laws of Maryland." [6]

Both Mr. Walsh and counsel for the Commissioners received notices early in October that the court would hear argument on the motion for summary judgment on Friday, 23 October and that, if necessary, the case would be tried on the merits immediately after the hearing on the motion. The same notice was sent to Bugg but he said he did not receive it until Tuesday, 20 October. Excerpts from the transcript of the proceedings of 23 October follow:

> "The Court: Mr. Bugg, are you ready to proceed in this matter?
>
> "Mr. Bugg: I don't see Mr. Racine [a county commissioner].
>
> "The Court: Was there a summons for Mr. Racine?
>
> "Mr. Bugg: Yes.
>
> "The Court: What does the docket show?
>
> "The Clerk: We really wouldn't have time to

---

6. Section 458 (a) and (b) of Art. 8 of the Code of Public Local Laws (1930 Edition), as enacted by Chapter 334 of the Acts of 1951 is as follows:

"458. (a) The County Commissioners of Cecil County are hereby *empowered* to designate, within the Seventh Election District of Cecil County a certain place, or places, to be used as taxi-stands and to require such taxicabs, when not in use carrying a passenger or passengers, to remain at said taxicab stand so designated, and the said County Commissioners are *further empowered* to pass such rules and regulations limiting or prohibiting cruising along the public streets or highways by such taxicab or taxicabs, where such cruising may menace public safety or unduly congest traffic.

"(b) The *owner* of each taxicab for which a license has been issued *shall maintain a call station* within the Seventh Election District of Cecil County which call station shall be operated twenty-four hours a day, seven days a week." (Emphasis added.)

Section 458 (a) and (b) was repealed by Section 1 of Chapter 223 of the Acts of 1967.

have a return on it, sir. He filed it at 4:47 last night. The Sheriff didn't get it until late.

"The Court: Last night at 4:47?

"The Clerk: Yes, sir.

"The Court: Why didn't you get your summons out earlier, Mr. Bugg? It doesn't give the sheriff's office much time. I see two of the Commissioners are here. This is your fault for delaying issuing summonses."

\* \* \*

"Mr. Bugg: I didn't get the news that the case was going to be today till Tuesday, when I got it, Tuesday, when I was notified of it.

"The Court: Well, on Tuesday you could have gotten your summonses out on Tuesday.

"Mr. Bugg: I didn't have time to get myself together for thinking for everything. So I would like to ask the Court then, if Mr. Racine ain't here, to postpone it to another date.

"The Court: No, sir, the Court is not going to postpone the case. \* \* \* I don't know what the purpose is of Mr. Racine being here. You can proffer if you want what testimony you expect from Mr. Racine. \* \* \* Do you have an attorney representing you?

"Mr. Bugg: No, sir."

\* \* \*

"The Court: Well, I want the record to show that I had a call from him yesterday, afternoon, late, informing me that you had seen him and told him that his services were no longer required, \* \* \*.

" \* \* \* So apparently Mr. Walsh is no longer representing you in this matter and he has withdrawn from the case at your request, is that right?

"Mr. Bugg: That is right."

\* \* \*

"Mr. Bugg: Why would you want to rush it through without Mr. Racine?

"The Court: Mr. Bugg, we just can't keep postponing these cases. We have other cases to try. There was plenty of notice. Now, then, the case is set. You are going to trial or the Court is going to take some action in the matter. Now are you ready to go ahead?

"Mr. Bugg: I am not prepared to go ahead without Mr. Racine."

\* \* \*

"The Court: \* \* \* Do you wish to press your motion for summary judgment?

"Mr. Garrett: Yes.

"The Court: I am going to grant this motion for summary judgment, Mr. Bugg, unless you go ahead and proceed. \* \* \*."

\* \* \*

"The Court: Mr. Clerk, you will say that the Court is going to grant the motion for summary judgment in this case, and, Mr. Bugg, if you are aggrieved at this you have a perfect right to take an appeal. The Court is not going to fool around with it any longer.

"Mr. Bugg: I think this country is supposed to be free of speech and free of liberty.

"The Court: All right. The Court has decided the matter. Motion for summary judgment granted in favor of the defendant for cause.

"Mr. Bugg: I will appeal.

"The Court: You go right ahead, Mr. Bugg."

We see but two issues. Was it error for the court to refuse a postponement? Was there error in the granting of the motion for summary judgment? The short and dispositive answer to the first issue is that Bugg did not comply with the requirements of Maryland Rule 527 c. There was no showing, by affidavit or otherwise, that Racine's testimony would have been material, competent and proper. Bugg did not express his belief that without

it his case could not be tried with justice to him. Obviously he did not use reasonable diligence in his effort to procure Racine's attendance; whether it could thereafter have been obtained within a reasonable time was not discussed. And, it will be recalled, Bugg ignored the court's invitation to proffer what Racine's evidence would be. Entirely apart from the Rule we have said many times that the grant or refusal of a postponement is in the sound discretion of the trial court. *King v. Mayor and Council of Rockville*, 249 Md. 243, 246 (1968). We do not see anything here which adds up to an abuse of that discretion.

We have not been able to find in Bugg's "Complaint for Damage" any allegations amounting to an action ex delicto. However, even if we assume that such an action did lurk therein, it has long since withered away. There is neither allegation nor evidence that a written notice was presented to the Commissioners "setting forth the time, place and cause of the alleged damage, loss" or injury within 90 days after the injury or damage was sustained, as required by Code (1969 Repl. Vol.), Art. 57, § 18. Nor is there anything to show that the cause of action, if one exists, accrued within three years of the filing of suit. Moreover, if the docket entries are an accurate reflection of what transpired at the 21 September hearing "both counsel agreed that this case be limited to contractual matter."

The granting of the motion for summary judgment also seems to be free of error. We have exercised great care in our review of the transcript of the record and we are quite satisfied that there is no genuine dispute as to any material fact. Indeed close scrutiny reveals with embarrassing clarity the fact that Bugg's answer to the motion for summary judgment is little more than so much twaddle. Section 458 (a) and (b) does not require the Commissioners "to provide and maintain a telephone" for Bugg. To the contrary it requires "the owner * * * [to] maintain a call station * * * twenty-four hours a day, seven days a week." At least it did until its repeal

became effective on 1 June 1967. But however absurd and improbable it would seem the Commissioners *might have agreed* to provide Bugg's cab stand with a telephone for $12 per year; even if they did, however, we must reject the notion that it is a material fact especially since Bugg does not allege that he ever paid the $12 in any of the 17 years between 1951 and 1969. Finally we think it proper to observe that it is somewhat exasperating to try to assay the materiality of a fact when the transcript does not tell us what the case is all about.

That we have given this appeal more attention than it really merits is all too obvious. We can only hope that we have dispelled Bugg's feeling that "he did not have justice in this case." We could, of course, have dismissed his appeal since he failed to comply with the provisions of Rule 828. Rules 835 a and 835 b (5).

*Judgment affirmed.*
*Appellants to pay the costs.*