ANNABEL WOLFE *v.* MADISON NATIONAL BANK

[No. 696, September Term, 1975.]

*Decided March 3, 1976.*

The cause was argued before MOYLAN, GILBERT and LOWE, JJ.

*Henry J. Noyes* for appellant.

*Thomas E. Donahue, Jr.,* for appellee.

GILBERT, J., delivered the opinion of the Court.

This case, concerning the liability of a promissory note guarantor, after default on the guaranteed note by the maker thereof, presents a basic issue, perceptively delineated for the jury by Judge Samuel Barrick. The judge instructed the jury that the sole question before them was whether the guarantor, appellant, actually signed the guarantee agreement. A secondary matter concerning the amount of attorneys' fees provided for in the guarantee has also been posited to us.

A "Joint Guarantee", dated November 18, 1971, securing a one hundred thousand dollar ($100,000) loan from Madison National Bank, appellee, to Abe Wolfe, appellant's husband,[1] contains the purported signatures of Abe Wolfe and his wife, Annabel Wolfe, the appellant. The agreement states that the guarantors:

> " . . . do hereby, jointly and severally, . . . unconditionally guarantee to the Madison National Bank [appellee], . . . the due and prompt payment of said loans and the due and prompt fulfillment of all obligations and liabilities of said borrower [Abe Wolfe] to the Madison National Bank . . . together with all expenses of enforcing or obtaining, or endeavoring to enforce or obtain, performance or payment thereof, including attorneys' fees equal to

---

1. Mr. Wolfe is not a party to this appeal.

15 [fifteen] percent of the amount owed. . . . We further authorize any attorney to appear for us in any court of record and to waive the issuance and service of process and to confess judgment against us in favor of the holder of this note for such amount as may be unpaid thereon, plus interest and the aforesaid expenses and fees."

By its terms, the guarantee agreement was to remain in effect " . . . until such time as said Bank shall actually receive written notice of its withdrawal. . . ." [2]

Five days later, on November 23, 1971, a note evidencing the one hundred thousand dollar ($100,000) loan to Abe Wolfe was signed by him in his individual capacity. Collateral for the loan was a mortgage held by Pyne Poynt Realty Company, for property it had sold. Abe Wolfe was president of Pyne Poynt Realty. The note was renewed numerous times, and the same collateral was maintained on all renewals. The last renewal occurred on October 16, 1973, which was evidenced by a new note signed by Abe Wolfe, individually, and which matured on January 14, 1974.

A bank officer testified that at the time of the latest renewal of the note, the Bank was aware that the mortgage constituting the collateral was in default. It is clear from the record that Pyne Poynt Realty, in lieu of foreclosure on the mortgage, took back a deed for the property, thus releasing the mortgage, and this fact was known to the Bank. Notwithstanding Mr. Wolfe's release of the mortgage and receipt of a deed for the property, the same collateral [3] i.e., the mortgage on the property, was recited to be the collateral.

---

**2.** The terms of the agreement allowed the guarantor to withdraw from the agreement, but the withdrawal would be effective only as to future loans and not to those theretofore incurred. It is beyond dispute that no such written notice was given in this case.

**3.** Regardless of the disposition of the collateral, in this case, the guarantee agreement authorized the Bank to exchange or surrender collateral " . . . without notice to or further assent from . . ." the guarantors, and the guarantors agreed to " . . . remain bound upon this guaranty notwithstanding such changes, surrender and extensions" of collateral.

Payment of the latter note was not made on the due date and, on January 29, 1974, in accordance with the terms of the note and guarantee agreement, a confessed judgment was entered against Abe and Annabel Wolfe. The judgment was for an amount equal to the principal of the loan, plus interest, and ten percent (10%) attorneys' fees which had been authorized by the terms of the guaranteed note. Subsequently, on June 21, 1974, the judgment was vacated as to Annabel Wolfe. The order to vacate the judgment was modified on June 28, 1974, so that the judgment continued " . . . as a valid and subsisting [j]udgment [as to Annabel Wolfe] until trial determination. . . ." Both orders were revoked, and a new hearing concerning the vacating of the judgment was held September 6, 1974. The confessed judgment was ordered vacated, but, on September 25, 1974, a new order was filed permitting the confessed judgment to " . . . be opened and continued . . ." until the time of trial rather than vacated.

A trial was conducted on May 12, 1975, in the Circuit Court for Montgomery County before Judge Samuel Barrick and a jury, to determine whether the appellant was liable under the guarantee agreement. At the close of all the evidence, the Bank was permitted to amend its pleadings, over objection, so as to change the claim for attorneys' fees from ten percent (10%), as provided in the note, to fifteen percent (15%), as stated in the guarantee agreement.

The trial judge instructed the jury that " . . . this is a fairly simple case in that it seems the only issue for you to decide is whether Annabelle Wolfe executed this joint guarantee. . . ." He further instructed the jury that if it found that Annabel Wolfe did sign the guarantee, then it should return a verdict for the Bank in the amount of the loan, plus interest, and including fifteen percent (15%) attorneys' fees. The jury's verdict was in favor of the Bank for $128,458.

Appellant contends that the trial judge erred " . . . in limiting the jury deliberations to [the] one single and narrow issue" of whether appellant signed the guarantee agreement. Appellant also argues that the trial judge should

not have instructed the jury that fifteen percent (15%) attorneys' fees would be proper since the confessed judgment only called for ten percent (10%) attorneys' fees and, in any event, there was no valid confession of judgment against the appellant.

We think the trial judge was correct in his instructions to the jury. Essentially, Judge Barrick said that the only disputed fact for the jury to resolve was the authenticity of the signature that appeared on the guarantee agreement. As a matter of law, under the evidence produced in this case, if the signature was found to be that of appellant, then appellant was liable for the loan, interest on the loan, and for the amount of the attorneys' fees as stated in the agreement. Judge Barrick properly narrowed and separated the issues of law and fact in his jury instructions.

The Uniform Commercial Code, as codified in Md. Ann. Code, Commercial Law Art. § 3-307, applies to the commercial paper purportedly containing appellant's signature. That section of the Code provides:

> "(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
>
> (a) The burden of establishing it is on the party claiming under the signature; but
>
> (b) The signature is presumed to be genuine or authorized. . . .
>
> (2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

Appellant did raise the issue of the effectiveness of her signature. The official comment to § 3-307 relates that "[t]he burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine. . . ." "Presumption" is defined in Md. Ann. Code, Commercial Law Art. § 1-201 (31), to mean " . . . that the trier of fact must find the existence of the fact presumed unless and

until evidence is introduced which would support a finding of its nonexistence."

In this case, the jury was presented with the guarantee agreement which contained what appeared to be the appellant's signature, clearly subscribed thereto. This evidence raised the presumption of genuineness. Although appellant testified at trial that she could not remember seeing the agreement previously or signing it at any time, she admitted that she sometimes signed documents at her husband's direction, and she did not read what she was signing. Appellant conceded that the signature " . . . look[ed] like . . ." hers. Appellant further admitted that at a deposition, taken July 25, 1974, she had testified that the signature on the guarantee agreement was, in fact, hers. Appellant's husband testified that he could not recall instructing his wife to sign the guarantee agreement. The other testimony neither refuted nor verified that appellant had signed the instrument. As we have previously noted, the evidence was submitted to the jury on the factual issue of whether appellant signed the agreement. Under the evidence, the jury could find, as they did, that the appellant had signed the instrument, and, thus, that the Bank was entitled to enforce the guarantee agreement.

We observe that as a matter of law the guarantee agreement obligated appellant to repay the loan, interest, and attorneys' fees. Under Md. Ann. Code, Commercial Law Art. § 3-416, a "Contract of guarantor" is defined as: "(1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." In the guarantee agreement bearing appellant's signature, it is stated, " . . . we [the undersigned] do hereby, jointly and severally, . . . unconditionally *guarantee* . . . due and prompt *payment*. . . ." (Emphasis supplied). *See Art Plate Glass & Mirror Corp. v. Fidelity Construction Co.*, 194 Md. 110, 69 A. 2d 808 (1949).

With respect to the instruction on the attorneys' fees, we think that basic contract principles resolve the question. The

guarantee agreement is a contract between the appellant and the Bank. The " . . . rule is that if there is no fraud, duress or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature as to all of its terms." *Binder v. Benson*, 225 Md. 456, 461, 171 A. 2d 248, 250 (1961). *See Rossi v. Douglas*, 203 Md. 190, 199, 100 A. 2d 3, 7 (1953). Appellant testified that she is a high school graduate, she had been the manager of a small hosiery shop at age nineteen, and she had worked as a clerk-typist for the government. No contention is made in this case that appellant was unable to understand the guarantee agreement or that fraud, duress, or mistake occurred. The plain, clear, and unambiguous terms of the guarantee agreement indicate that if it became necessary to enforce the contract, and expenses were incurred, then the guarantor, appellant, would be liable for those expenses " . . . including attorneys' fees equal to 15 percent [15%] of the amount owed." By appellant's own guarantee contract with the Bank, she was obligated to pay fifteen percent (15%) attorneys' fees. Recently, in *Mortgage Investors v. Citizens Bank and Trust Co.*, 29 Md. App. 591, 349 A. 2d 647 (1976), we upheld a promissory note provision for attorneys' fees because the contract was freely entered into by the parties. Similarly, in this case, appellant willingly entered the guarantee agreement. Since the Bank was enforcing the terms of both the guarantee contract and the guaranteed note, either amount of attorneys' fees could have been claimed. Consequently, the amendment to the Bank's pleading was permissible and the judge's instructions that if the jury determined that appellant had signed the guarantee agreement, then the verdict should include fifteen percent (15%) attorneys' fees, was proper.

The jury verdict was for $128,458. This sum included $100,000 as the principal amount of the note, $13,458 interest, and $15,000 attorneys' fees. The judgment entered on the verdict provided for interest on the entire verdict from May 12, 1975. Interest should not be allowed upon that $15,000 portion of the verdict concerned with the attorneys'

fees as such fees are part of the costs and costs do not bear interest. *Webster v. People's Loan, Sav. & Deposit Bank*, 160 Md. 57, 152 A. 815 (1931). We, therefore, modify the judgment to read: "Judgment in favor of plaintiff, Madison National Bank, against the defendant, Annabel Wolfe, for $113,458, current money with interest from May 12, 1975, and an attorney's fee of $15,000, and costs."

*Judgment modified and as modified affirmed.*

*Costs to be paid by appellant.*