DANIEL H. OVERMYER a/k/a D. H. OVERMYER
AND/OR DAN H. OVERMYER v. LAWYERS
TITLE INSURANCE CORPORATION

[No. 1206, September Term, 1975.]

*Decided June 29, 1976.*

The cause was argued before ▮GILBERT, MENCHINE and MOORE, JJ.

*David C. Daneker* and *Paul W. Madden*, with whom were *Constable, Alexander & Daneker* on the brief, for appellant.

*John J. Ghingher, Jr.*, and *Deborah E. Hunt* for appellee.

*GILBERT, J., delivered the opinion of the Court.

In this appeal, Daniel H. Overmyer a/k/a D. H. Overmyer and/or Dan H. Overmyer, seeks to reverse a judgment of the Circuit Court for Baltimore County (Proctor, J.) in which Lawyers Title Insurance Corporation was awarded monetary damages against Overmyer in the amount of

$59,752.[1] The judgment was entered after a hearing on an attachment on original process. Md. Rule G55.

Overmyer poses a tetrad of questions to us, asserting that an affirmative answer to any one of them requires a reversal of the judgment.

Before we undertake to discuss the issues raised in this case, it is necessary to set forth briefly the scenario giving rise to the appeal.

B & E Sales Company obtained, in the Circuit Court for Baltimore County, on May 7, 1971 (Jenifer, J.), a monetary decree against D. H. Overmyer Co., Inc., because Overmyer, Inc., breached, as landlord, a lease with B & E Sales. The decree provided that Overmyer, Inc., was to pay B & E Sales $7,749.99 and, in addition thereto, Overmyer, Inc., was directed to pay B & E Sales ". . . $1,400.00 per month beginning as of May 1, 1971, . . . and the balance to be paid thereafter on the first day of each succeeding month beginning June 2, 1971, and up to and including February 1, 1976." [2]

Apparently, Overmyer, Inc., decided to sell the Baltimore County warehouse, the lease to which, we infer, brought about the litigation with B & E Sales. The property was sold to a group of individuals, which included among its number Daniel H. Overmyer. Lawyers Title was engaged to insure the title of the purchasers. The title company discovered the unsatisfied judgment of B & E Sales against Overmyer, Inc. Seemingly, after some preliminary discussion, the title company agreed to issue a policy provided that Overmyer, Inc., and Daniel Overmyer, individually, would indemnify the title company against any loss it might incur if the B & E Sales' judgment was not paid pursuant to its terms.

---

1. We note that the judgment should have been entered in the following form: "Judgment absolute in favor of the plaintiff, Lawyers Title Insurance Corporation, against the defendant, Daniel H. Overmyer, etc., for the sum of $52,752, current money with interest from October 20, 1975, and an attorney's fee of $7,000, and costs." See Wolfe v. Madison Nat'l Bank, 30 Md. App. 525, 531-32, 352 A. 2d 914, 918 (1976).

2. The judgment was affirmed by the Court of Appeals in an unreported, per curiam opinion, D. H. Overmyer Co. v. B & E Sales Company, Inc., No. 181 (Md., filed January 17, 1972).

In February, 1974, Lawyers Title was advised by a letter from counsel for the property owners that the judgment was in default and that the judgment creditor was threatening to execute upon the judgment and seek a sheriff's sale of the property. The title company satisfied the judgment creditor by paying to it $52,752 and receiving from the creditor an assignment of its judgment against Overmyer, Inc.

Lawyers Title, on August 21, 1974, filed against the appellant Overmyer a narr in assumpsit, together with a motion for summary judgment, an affidavit in support of the motion, various exhibits, an attachment on original process, an affidavit in support of the attachment, and a bond. The sheriff of Baltimore County was instructed to attach and "leave where found" Overmyer's undivided one-tenth (1/10) interest in the property known as 7636 Canton Center Drive. Notice of the proceedings was sent to Overmyer by certified mail, return receipt requested, but it was twice returned, once marked "refused addressee not home to receive" and the other time simply "unclaimed." When the second attempted service was unsuccessful, counsel for the title company caused to be sent by ordinary mail, addressed to what appears to be a home address in New York State, and to a business address in New York City, copies of the pleadings together with all allied papers. On the same date, December 9, 1974, Perry Raabe, Esq., one of the attorneys for the title company, in response to a telephone call to the Overmyer residence, received a telephone call from Overmyer. In the course of the ensuing conversation, Overmyer was advised of the pending litigation. Eighteen days later, Lawyers Title moved for the entry of a judgment *nisi* and it was entered on the same day, December 27, 1974.

Overmyer, on January 10, 1975, filed a motion to strike the judgment *nisi* assigning as reasons that: (1) there had been no *bona fide* effort to serve him; (2) the entry of the judgment *nisi* eighteen (18) days after the telephone notice was ". . . inequitable and improper and constituted surprise, irregularity and mistake, . . ." depriving Overmyer of his opportunity to raise a meritorious defense; (3) the "notice" to

Overmyer of the time to plead recited that he had 60 days in which to answer and that a shortening of that period was a surprise, mistake or irregularity; (4) that he had a meritorious defense which he was denied by reason of the judgment *nisi*; and (5) that the total amount of the judgment should have been for an amount less than $10,000. An order directing Lawyers Title to show cause why the judgment *nisi* should not be stricken was issued. Before that reply was forthcoming, Overmyer filed a paper writing titled "Answer" in which he asserted as a "first defense" the general issue plea in assumpsit. He also embodied in the "Answer" a first, second, and third affirmative defense going to the merits of the title company's claim. Overmyer further answered the motion for summary judgment.

Lawyers Title responded to the show cause order on February 14, 1975, and the case was set for hearing. Notice of the hearing date was mailed to counsel ". . . around September 15th or 20th . . . ." Three days before the hearing, that is, on October 17, 1975, Overmyer requested a "continuance or postponement" on the ground that he had another case scheduled for trial in Toledo, Ohio, on the same day, October 20, 1975. Judge H. Kemp MacDaniel refused to postpone the case, and the matter reached Judge Proctor on October 20, 1975. Overmyer again requested a postponement. Judge Proctor denied it. After hearing brief testimony, a judgment *nisi* was entered in favor of the title company on the debt [short note]. Following the overruling of a motion for a new trial, judgment absolute was recorded on November 3, 1975.

Overmyer argues that Judge Proctor erred in four respects in entering the judgment. We shall consider each contention as posed.

## I.

"The Judgment of Condemnation Absolute was improperly entered because it was founded on a Judgment of Condemnation Nisi entered without proper prior notice to the Defendant."

Subtitle G of the Md. Rules prescribes the procedure to be followed in seeking an attachment on original process. Such a procedure is available whenever the plaintiff has a matured or unmatured *ex contractu* or *ex delicto* claim against a person who, *inter alia,* is a non-resident owning property or credits within this State. Md. Rules G40, G40a, G41a. Upon the filing of a declaration, affidavit in support thereof, documentary evidence of the claim, a bond to the State in an amount equal to the claim, and instructions to the sheriff as to the description and location of the property to be attached, Md. Rule G42, the court may issue an order directing the attachment. Md. Rule G44. The writ is served by the sheriff by posting a copy of the writ upon the property of the defendant. Md. Rule G46. All the above were caused by Lawyers Title to be accomplished. At issue, here, is whether there was compliance with Md. Rule G48. That rule provides:

> "In addition to the writ of attachment, the clerk shall issue a writ of summons to the defendant. Where the defendant cannot· be served with the writ of summons, and has not voluntarily appeared, the plaintiff shall make reasonable efforts to ascertain the actual whereabouts of the defendant and to bring to the knowledge of the defendant that an attachment on original process is pending against him. A judgment of condemnation *nisi* shall not be entered until the plaintiff shall satisfy the court by affidavit that he has notified the defendant or has made a *bona fide* effort to locate and notify him."

An affidavit made by Perry Raabe, Esq., recited in detail the efforts made to effect service upon Overmyer. Mr. Raabe narrated in his affidavit the gist of his telephone conversation with Overmyer. We think the affidavit discloses that the attempts to serve Overmyer were *bona fide* and that the trial court properly so held.

Overmyer next asseverates that the "notice" to him of the suit contained a caveat that he had sixty (60) days in which

to answer, and that the entry of the judgment *nisi* prior to the expiration of sixty (60) days was error. The notice to plead read:

> "You are hereby notified that an Attachment on Original Process proceeding, or law suit, has been filed against you by Lawyers Title Insurance Corporation, Plaintiff in the above-entitled proceedings, in the Circuit Court for Baltimore County, State of Maryland, to recover on the causes of action therein stated and attached hereto, pursuant to Rules G40-61, Maryland Rules of Procedure and related laws. You must plead or answer the Declaration, or law suit alleging the causes of action, within sixty (60) days from the date of delivery noted upon your Return Receipt to this Notice, or else Judgment by Default may be entered against you. This Notice and Service is made pursuant to Rules G48, G51(a), 307(d)(8) and 107(a)(2) and (b), Maryland Rules of Procedure, and pursuant to Article 75, Sections 78, 94-100, Annotated Code of Maryland (1957 Ed., 1969 Rpl. Vol.), and Courts and Judicial Proceedings, Article (1974 Vol.), Section 6-103, 6-301 and 6-304, annotated [sic] Code of Maryland."

We perceive no merit in Overmyer's contention. 4 *Poe's Pleading and Practice* § 554 (6th ed. H. Sachs 1975) [hereinafter referred to as *Poe* (Sachs)] and 2 J. Poe, *Pleading and Practice in Courts of Common Law* § 554 (5th ed. H. Tiffany 1925) both state that an attachment proceeding consists of two distinct parts, one, the attachment, and the other, a suit against the non-resident styled the "short note case." When a defendant appears, he does so in the "short note case," not in the attachment. It is apparent from the record that Overmyer did, under the guise of an "answer," file a general issue plea, in addition to his "affirmative defenses," and, thus, appeared and put the matter at issue before the trial court. Moreover, the fact that the judgment *nisi* had been entered prior to Overmyer's

appearance did not jeopardize appellant because in a hearing resulting from appellant's motion to strike the judgment *nisi*, the hearing judge, while denying the motion, nevertheless ordered that ". . . no Judgment of Condemnation Absolute be entered until after a hearing on the merits." Such an order had the practical effect of retaining appellee's lien while simultaneously assuring appellant that no further action would be taken thereon until after a trial on the merits.

Moreover, we think appellant misreads the notice requirements of the Md. Rules. The notice of suit is directed to the short note case, not the attachment. 4 *Poe* (Sachs) §§ 554-58. *See also* 2 J. Poe, *Pleading and Practice in Courts of Common Law* §§ 554-58 (5th ed. H. Tiffany 1925).

In the instant case, Overmyer did not enter his appearance within the prescribed time, and the title company, having fully complied with Rule G48, was entitled to the entry of a judgment *nisi*. Such a judgment is an inchoate lien which operates to condemn specific property and render it liable to future execution and judicial sale, after successful trial, the obtaining of a judgment of condemnation absolute and the issuance of a writ of *fieri facias* thereon. 4 *Poe* (Sachs) § 690. A judgment *nisi* is a specific lien, and should final judgment be obtained, the lien relates back to the time when the property was attached and eliminates subsequent claims and liens from priority. *Id.* Of course, if the plaintiff does not prevail at trial, the attachment fails. 4 *Poe* (Sachs) § 556; *Philbin v. Thurn ex rel. Cook*, 103 Md. 342, 351, 63 A. 571, 574 (1906); *Randle v. Mellen*, 67 Md. 181, 188, 8 A. 573, 575 (1887).

Overmyer also assails the constitutionality of the Maryland procedure for attachment on original process as it was applied in the case now before us. He bottoms his argument on the Due Process Provisions of the 14th Amendment, pointing out that the Supreme Court of the United States has "carefully articulated" the proper test to be applied ". . . with regard to instances where pre-judgment attachment of a debtor's property is involved." The Court, in *Fuentes v. Shevin*, 407 U. S. 67, 92 S. Ct. 1983, 32 L.Ed.2d

556 (1972), struck down replevin procedures in use in Florida and Pennsylvania after noting that in neither State was the debtor offered a pre-deprivation of property hearing. 407 U. S. at 90. Similar holdings relative to pretrial disposition were handed down by the Court in *Bell v. Burson*, 402 U. S. 535, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971); *Sniadach v. Family Finance Corp.*, 395 U. S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969).

The fallacy in Overmyer's position is that unlike *Fuentes*, *Sniadach* or *Bell*, there has been, in this case, no deprivation of property prior to a judicial hearing. At best, an attachment, an inchoate lien, was laid upon the one-tenth interest Overmyer had in the realty that was the subject of the title insurance property, and he was not subjected even to temporary loss, *pendente lite*, of the possession of the property. *Mitchell v. W.T. Grant Co.*, 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974). *Compare*, however, *Roscoe v. Butler*, 367 F. Supp. 574, (D. Md. 1973), wherein Chief Judge Northrop held unconstitutional the then Maryland District Court procedure for attachment after two *non ests*. The distinction between *Roscoe* and the instant case is that here the objectionable feature found in *Roscoe*, a clerk cloaked with the authority to issue the attachment, is not present. In the case *sub judice*, the right to issue is reserved to the court, and then only after a ". . . review of the documents required . . ." to be filed. Md. Rule G44.

As we see it, the procedure followed in the matter now before us comports with due process of law and adequately accommodates the antagonistic interests of the parties. We hold that the Maryland Rules relative to attachment on original process as applied in the case at bar are constitutional.

II.

"The Circuit Court abused its discretion in denying Defendant's [Overmyer's] Motion for Continuance or Postponement."

On the day of the hearing on the merits, October 20, 1975,

appellant's attorney moved for a continuance or postponement because Overmyer, appellant's only witness, could not attend. The reason for Overmyer's absence was that he was to appear in an Ohio court in an action that appellant believed exposed him to greater liability than the Maryland suit. Judge Proctor examined an affidavit made by the appellant's New York attorney which indicated that the Ohio suit had been instituted on September 14, 1975, removed to the federal district court, and then sent back to the Ohio courts on October 10, 1975. It appeared that appellant never requested a continuance or postponement of the Ohio proceedings although appellant knew of the October 20, 1975, Maryland hearing date from the time notice was sent by the court to the parties on September 15, 1975. The hearing judge denied the motion and stated that in light of this sequence of events, the appellant should have advised the Ohio court of the prior hearing date in Maryland.

We agree with Judge Proctor's analysis and ruling. It is unmistakable from a reading of the chronology of events that the Maryland hearing date was firmly set long before a trial date could have been set in Ohio. That Overmyer thought the Ohio case would be settled and, thus, the conflict in the trial dates would disappear is no valid reason, in our view, for not seeking a postponement of the Ohio litigation. Appellant's miscalculation of settlement is not sufficient reason to postpone the Maryland case. Judge Proctor properly exercised his discretion in denying the motion for continuance or postponement. Md. Rule 527. *See Bugg v. Cecil County Comm'rs*, 261 Md. 507, 276 A. 2d 31 (1971); *King v. Mayor and Council of Rockville*, 249 Md. 243, 238 A. 2d 898 (1968); *Johnson v. State*, 237 Md. 283, 206 A. 2d 138 (1965).

### III.

"The Circuit Court erroneously found Defendant [appellant] Daniel H. Overmyer liable for a sum greater than that specified in the Agreement of Indemnity."

The Indemnification Agreement executed by Overmyer, in consideration of the title company's issuing, "without exception," a policy, provided that Overmyer would indemnify and hold harmless the Lawyers Title from any payment that they were called upon to make. The "hold harmless" proviso embraced ". . . all liability, loss, costs, damage, detriments and expense which it may incur or suffer, including without limitation, court costs and attorneys' fees, resulting from or by reason of, or arising out of or in any way connected with the issuance of . . . [a] binder or . . . policy . . . , or the filing, enforcement or attempted enforcement of any . . . liens . . . ." The judgment that B & E Sales held against Overmyer was described as follows:

"Judgment dated May 7, 1971 in favor of E & E Sales Company [sic] in the amount of $7,749.99 together with cost of appeal thereof amounting to approximately $2000.00, and payments in the amount of $1400.00 per month to date pursuant to said judgment."

The indemnity agreement was dated August 30, 1972. Overmyer asserts that the policy plainly indicates that he is only liable for payments of judgment to the date the policy was issued, or a total of $30,749.99 plus costs, assuming no interim payments had been applied against the judgment. Needless to say, the title company has a somewhat different view of what the language contained in the indemnity agreement means. They argue, *inter alia*, that they hardly would have written a policy undertaking to pay all sums due by Overmyer to B & E Sales in excess of the $30,749.99 when it is apparent that their exposure would be some $20,000 more.

Judge Proctor reasoned as follows:

". . . [P]aragraph 2 on page 3 of the Indemnification Agreement provided that the Indemnitors which include Daniel H. Overmyer, individually, the defendant, before me would

indemnify Lawyers Title from and against any and all liability, loss, cost, damage, detriments and expense, so forth, and then picking up arising out of or in any way connected with the issuance such binder or binders and policy or policies that setforth of [sic].

This Indemnification Agreement is dated August 30th, 1972. Immediately prior thereto Lawyers Title through its agent Real Estate Title Company Incorporated issued a [sic] 'Interim title insurance binder,' dated April 23, 1972 which specifically provided that they would be furnished, that is Lawyers Title would be furnished an Indemnification Agreement. This correctly described the holder of the monetary decree as B & E Sales Company and states that the decree provided for the payment of fourteen hundred dollars per month by D. H. Overmyer Company, Inc. to B & E Sales Company starting May 1, 1971 and ending on February 1, 1976.

The decree also provides for open court costs in amount of twelve hundred sixty-six dollars and thirty-six cents.

That paragraph to be noted makes no reference to the amount of the monetary decree of May 7, 1971 signed by Judge Jenifer which was, according to paragraph 4, in the amount of seven thousand seven hundred forty-nine dollars and ninety-nine cents.

That omission is accounted for by the fact . . . that the basic amount of the decree had been paid at the time of the execution of the Indemnification agreement and at the time of the settlement in this case.

So, we have here a man who is obviously an experienced businessman signing an Indemnification agreement, which according to the only testimony before me, was prepared either on his behalf

or [on] behalf of the company bearing the name of D. H. Overmyer which loosely describes the monetary decree, but carries with it a point of preference, mainly the interim Title Insurance binder which specifically sets forth the obligations which . . . [were] indemnified by Mr. Overmyer.

Any ambiguity in the Indemnification Agreement is resolved by this [in]corporation of the binder by reference. So, it is my judgment that under the decree stated of fact judgment should be entered in favor of the plaintiff against the defendant in [the] amount of fifty-two thousand seven hundred fifty-two dollars plus reasonable attorney fees."

We think the phrase "to date pursuant to said judgment" was intended by the parties to mean not that Overmyer agreed to hold harmless the title company only to the date of the indemnity agreement, but rather to hold them harmless for the payments required to the date set forth in the judgment, *i.e.*, February 1, 1976. When the title policy binder is read in conjunction with the title policy, no other reasonable interpretation can be made. We are unpersuaded that there was a mutuality of mistake by the parties because it is apparent from a reading of the record that appellant, Overmyer, knew precisely what payments Overmyer, Inc., was required to make on the judgment against the corporation.

Furthermore, the indemnity agreement calls upon Overmyer to repay Lawyers Title for any and "all liability" they sustained as a result of issuing the title policy. As we have previously observed, the title company was required to pay to B & E Sales $52,749.99 in order to protect the policy insured. Overmyer is liable to the title company for that compelled expenditure.

## IV.

"The Circuit Court erred in rendering an in personam judgment against the Defendant Daniel

H. Overmyer because he was never personally served, and by his appearance, did not subject himself to a personal judgment."

Overmyer bottoms his argument in the above-quoted contention upon three decisions by the Court of Appeals, scilicet, *Eshelman Motors ex rel. Ottenheimer v. Scheftel,* 231 Md. 300, 189 A. 2d 818 (1963); *Miller Bros. Co. v. State,* 201 Md. 535, 546-47, 95 A. 2d 286, 291-92 (1953); and *Potomac Steamboat Co. v. Clyde,* 51 Md. 174 (1879). *Eshelman* holds that a court has revisory powers over its own judgments for thirty days following entry of the judgment. In cases more than thirty days old, a judgment may only be set aside for fraud, mistake, or irregularity, and even then only if a meritorious defense to the plaintiff's claim is shown. *Himes v. Day,* 254 Md. 197, 254 A. 2d 181 (1969). *Potomac* states that:

"There is no doubt of the legal right of the defendant to appear for that purpose [*i.e.*, to move to strike a judgment condemnation and quash execution] in the attachment case, without thereby being within the jurisdiction of the court in respect to the suit against him personally." 51 Md. at 179.

*See also Miller Bros., supra* at 546-47.

Overmyer overlooks the very next paragraph of the opinion which states:

"When we examine the petition and motion . . . made by the appellee, . . . we discover nothing therein to show that his appearance by attorney was in any other suit except in the attachment case, for the purposes before mentioned, and this being so, such appearance cannot be construed to be a voluntary appearance in the action of *assumpsit.* That suit had been discontinued, he had never been served with process therein, and consequently the court could have no jurisdiction or power to render a judgment *in personam* against him in that case. *Wynn v. Wyatts,* 11 Leigh, 584." 51 Md. at 179.

Although the appellant, in the case at bar, did move on January 10, 1975, to strike the judgment *nisi*, he did not endeavor preliminarily to quash the attachment. Instead, on February 5, 1975, appellant filed, as we have previously noted, an "Answer." The "Answer" contained the general issue plea in assumpsit and a narration of affirmative defenses which clearly went to the merits of the title company's claim as well as praying that ". . . the contract between Plaintiff [Lawyers Title] and Defendant [Overmyer] be rescinded and/or that the Declaration be dismissed with costs against the Plaintiff, and that Plaintiff's attachment on original process be quashed . . . ."

When Overmyer filed his "Answer," which was in reality a plea, he subjected himself, personally, to the jurisdiction of the court. He might have avoided personal jurisdiction by moving to strike the judgment *nisi* and then moving to quash the attachment. 4 *Poe* (Sachs) § 554. We reject Overmyer's contention that, because he also asked in the "Answer" that the attachment be quashed, he has done all required of him. At the expense of repetition, we reiterate that he pleaded to the merits of the case and, thus, subjected himself personally to the court's jurisdiction.

We pointed out in *Wolfe v. Madison Nat'l Bank, supra* note 1, that it is usually improper for an attorney's fee to be included in the principal sum of the judgment. We said, "[i]nterest should not be allowed upon that . . . portion of . . . [a] verdict concerned with the attorneys' fees as such fees are part of the costs and costs do not bear interest." 30 Md. App. at 531-32. Following our holding in *Wolfe v. Madison Nat'l Bank, supra*, we modify the judgment to read: "Judgment in favor of the plaintiff, Lawyers Title Insurance Company against the Defendant Daniel H. Overmyer, a/k/a D. H. Overmyer, and/or Dan H. Overmyer, for the sum of $52,752, current money with interest from October 20, 1975, and an attorney's fee of $7,000, and costs."

> *Judgment modified and as modified affirmed.*
> *Costs to be paid by appellant.*